In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2921

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES GOODWIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:11-cr-20036-RM-BGC-1—**Richard Mills**, *Judge.*

ARGUED JANUARY 15, 2013—DECIDED MAY 8, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Charles Goodwin pleaded guilty
to knowingly failing to register and update a registra-
tion as a sex offender, as required by the Sex Offender
Registration and Notification Act ("SORNA"). He was
sentenced to 27 months' imprisonment, to be followed
by a life term of supervised release, subject to ten
special conditions. Goodwin claims that the relevant
SORNA provision is an unconstitutional delegation of

legislative authority; argues that the district court committed plain error by miscalculating his advisory Sentencing Guidelines range for supervised release and then imposing a sentence within that miscalculated range; and challenges four conditions of his supervised release. We find his nondelegation claim unpersuasive, and therefore affirm his conviction. We further hold that the erroneous calculation of the advisory Guidelines range and the imposition of special conditions without explanation by the district court or support in the record warrant vacating his sentence and remanding to the district court for resentencing.

## I. BACKGROUND

### A. *Goodwin's History & Current Offense*

In 1994, Goodwin pleaded no contest to a charge of an attempted lewd and lascivious act in the presence of a child. Although the full extent of the conduct supporting the charge is now in dispute, it suffices to say for the purposes of this appeal that Goodwin concedes that he did not contest the charge.[1] Goodwin received

---

[1] The government's brief makes reference to additional facts contained in the police report from this incident. This report alleges conduct far beyond that used as the basis for the conviction. To the extent that the police report conflicts with and includes information extraneous to that contained in the charging document, plea agreement, or plea colloquy, we do not rely on its description of Goodwin's conduct. *Cf. Shepard*

(continued...)

a noncustodial sentence of three months' community control (a Florida program under which offenders are geographically constrained) and three years' probation.

Unbeknownst to Goodwin at the time, this light sentence was only the beginning of his self-inflicted troubles. In December 2006, he was convicted of failure to register as a sex offender in Douglas County (Illinois) Circuit Court. On August 27, 2007, Goodwin registered as a sex offender in Illinois, listing as his residence a homeless shelter in Champaign. Staff at this shelter did not observe Goodwin there after September 17. By October 2, Goodwin had moved to Florida, where he registered as a sex offender on that date. He was notified by Florida authorities that he was required to re-register in April 2008, but failed to do so. He was arrested in Florida in July 2008 for this failure to register. While in state custody, he registered as a sex offender and was notified that he was required to re-register in October 2008.

Goodwin moved from Florida to Illinois in September 2008. Having left the state—or fled, according to his ex-wife—Goodwin failed to appear at an October 15 court date stemming from his earlier failure to register

---

[1] (...continued)
*v. United States*, 544 U.S. 13, 16 (2005) (holding that a sentencing court cannot look to police reports to determine whether a guilty plea to an earlier offense is classifiable as a violent felony in determining whether certain penalty provisions apply during the sentencing hearing for a later offense).

in Florida. He also failed to re-register that month in Florida, as required under Florida law. He further failed to register in Illinois following his move, running afoul both of Illinois's sex-offender-registry law and of SORNA, which makes it a felony for a sex offender knowingly to fail to register following an interstate move, 18 U.S.C. § 2250(a).

Goodwin was arrested in Vermilion County, Illinois, on June 29, 2011. On July 13, a federal grand jury returned an indictment alleging that he was required to register under SORNA based on his 1994 conviction, but knowingly failed to do so when he traveled from Florida to Illinois in September 2008 and thereafter. Goodwin pleaded guilty on April 25, 2012.

Following Goodwin's guilty plea, a probation officer prepared his Presentencing Report. The probation officer classified Goodwin's offense level as 10 and his criminal history category as V, leading to a Guidelines range of 21 to 27 months' imprisonment. The officer then stated that the Guidelines advised a period of supervised release of five years to life, citing U.S.S.G. § 5D1.2(b)(2) & (c). The Presentencing Report did not include recommendations regarding either any mandatory or special conditions related to the recommended period of supervised release.

On August 16, the district court sentenced Goodwin to 27 months' imprisonment, to be followed by a life term of supervised release. In reaching this sentence, the district court considered the factors listed in 18 U.S.C. § 3553(a). Specifically, the court considered Goodwin's

criminal history, particularly his repeated disregard of sex-offender-registration laws, but also noted that his difficult childhood and history of drug use and mental health issues provided some mitigation. The district court also imposed ten special conditions on Goodwin's period of supervised release. The following four conditions are at issue in this appeal:

Condition 4: You shall participate with the U.S. Probation Office's Computer and Internet Monitoring Program . . . . You shall install filtering software on any computer you possess or use, which will monitor and block access to sexually oriented website[s]. You shall allow the probation officer unannounced access to any computer you possess or use to verify that the filtering software is functional . . . . You shall submit to the search of your person, automobile, and property under your control by the probation officer. You shall allow the probation officer to conduct periodic, unannounced examinations of your computer equipment . . . which may include retrieval and copying of all data from your device . . . or removal of such equipment for the purpose of conducting a more thorough inspection.

Condition 5: You shall have no contact with any person under the age of 18 except in the

presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer.

Condition 6:    You shall neither possess nor have under your control any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material . . . .

Condition 7:    You shall not receive or transmit any sexually arousing material, including child pornography, via the internet, nor visit any website . . . containing any sexually arousing material, including child pornography.

The district court did not discuss its reasons for imposing these special conditions. Immediately after stating the conditions, the court asked Goodwin a question concerning an unrelated topic. Neither party objected to the imposition of these conditions.

## B. *The Sex Offender Registration and Notification Act*

Since one of the issues in this appeal concerns the constitutionality of SORNA, we provide a brief overview of the relevant sections of this statute and applicable regulations. Congress enacted SORNA in 2006 as part of a larger bill, the Adam Walsh Child Protection and Safety Act ("the Adam Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587, aimed at establishing national standards

for sex-offender registration programs. 42 U.S.C. §§ 16911-16929. In the introductory section to the law, Congress stated that SORNA's purpose is "to protect the public from sex offenders . . . and respon[d] to the vicious attacks by violent predators." 42 U.S.C. § 16901. With this purpose in mind, Congress "establish[ed] a comprehensive national system for the registration of those offenders." *Id.* Offenders must update their registration in this new registration system within three days of any change in name, residence, employer, or student status. 42 U.S.C. § 16913(c). SORNA also makes it a felony for a covered offender to travel in interstate or foreign commerce and knowingly fail to register or update his or her registration. 18 U.S.C. § 2250(a).

SORNA grants the Attorney General the "authority to specify the applicability of the [registration] requirements . . . to sex offenders convicted before the enactment of [SORNA]." 42 U.S.C. § 16913(d). Beyond this general grant of authority, the statute contains no provision that provides guidance to the Attorney General regarding what factors to consider in making this determination.

In February 2007, the Attorney General issued an interim regulation, pursuant to his authority under § 16913(d), which applied SORNA's registration requirements to all pre-enactment sex offenders. 72 F.R. 8894, 8897. The Attorney General made this regulation permanent in July 2007. 73 F.R. 38063.

## II. ANALYSIS

Goodwin presents three issues on appeal. First, he renews his constitutional objection to 42 U.S.C. § 16913(d)—which, again, grants the Attorney General the discretion to prosecute for failure to register under SORNA offenders whose convictions predate the enactment of SORNA—as an unconstitutional delegation of legislative authority to the executive branch. Second, he argues that the district court's miscalculation of the advisory Guidelines range for his term of supervised release constitutes plain error. Third, he claims that Conditions 4 through 7 are not reasonably related to his failure-to-register offense, involve a greater deprivation of liberty than is necessary, and violate the First Amendment. We address these arguments in turn.

### A. The Constitutionality of SORNA

Goodwin claims that the provision of SORNA under which he was convicted violates nondelegation principles and therefore is unconstitutional. We review the constitutionality of a federal statute *de novo*. *United States v. Hausmann*, 345 F.3d 952, 958 (7th Cir. 2003). A delegation is "constitutionally sufficient if Congress clearly delineates [1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

Here, all three requirements are met. SORNA directs the Attorney General to exercise his discretion in a

manner consistent with the intelligible principle of "protecting the public" from sex offenders and establishing a "comprehensive" registry; the statute identifies the Attorney General as the official to exercise this delegated authority; and the Attorney General's authority is narrowly restricted to determining the applicability of SORNA to offenders whose crimes predate the statute's enactment.

First, SORNA provides an intelligible principle to guide the Attorney General's exercise of delegated authority. When Congress confers policymaking authority on executive branch officials, it must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (quotation marks and citation omitted). The principle set forth in SORNA to guide the Attorney General's discretion qualifies as intelligible. SORNA contains a clear statement of Congress's purpose in enacting the statute:

> In order to protect the public from sex offenders and offenders against children and [to] respon[d] to the vicious attacks by violent predators against the victims listed below, Congress . . . establishes a comprehensive national system for the registration of those offenders.

42 U.S.C. § 16901.

This section provides sufficient guidance to the Attorney General for two reasons: (i) § 16901 conveys to the Attorney General that the delegated authority should be exercised with the goal of "protect[ing] the

public" from a specific class of criminals; and (ii) § 16901 notifies the Attorney General that he or she should act in a manner that furthers Congress's objective of a "comprehensive" registration system. *See United States v. Ambert*, 561 F.3d 1202, 1214 (11th Cir. 2009) ("By setting forth the broad policy goal of protecting the public and seeking a 'comprehensive' national registry, Congress has suggested that the Attorney General should require pre-2006 sexual offenders to register to the extent that he determines it would contribute to the protection of the public and the comprehensiveness of a national sex offender registry."). The guidance that SORNA provides regarding protecting the public from specified offenders constitutes an intelligible principle. *Cf. Yakus v. United States*, 321 U.S. 414, 420 (1944) (directive that any regulation be "generally fair and equitable" qualifies as an intelligible principle); *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216-17 (1943) (principle that regulators act "in the public interest" qualifies).

Second, SORNA specifies the Attorney General as the executive branch official designated to exercise delegated authority. Thus, the nondelegation doctrine's requirement that Congress "clearly delineate[ ] . . . the public agency which is to apply [the policy]," *Am. Power & Light Co.,* 329 U.S. at 105, is met.

Third, SORNA sets clear boundaries on the Attorney General's exercise of discretion in virtually every respect, with the exception of the provision at issue in this case. The statute contains detailed directives regarding virtually every aspect of the establishment of

the national registry. For instance, Congress determined which crimes require registration, 42 U.S.C. § 16911, the locations, deadlines, and methods for registration, 42 U.S.C. § 16913(a)-(c), and the specific penalties for violations, 18 U.S.C. § 2250(a). Indeed, the determination of whether the statute applies to pre-enactment offenders is one of the few areas in which the Attorney General exercises discretion. *See Ambert*, 561 F.3d at 1214 ("Congress made virtually every legislative determination in enacting SORNA, which has the effect of constricting the Attorney General's discretion to a narrow and defined category.").

We arrived at this same conclusion in *United States v. Dixon*, a similar constitutional challenge to SORNA on nondelegation grounds. 551 F.3d 578, 583-84 (7th Cir. 2008) *rev'd on other grounds and remanded sub nom. Carr v. United States*, 130 S. Ct. 2229 (2010). This court will not re-examine a recent decision unless presented with a compelling reason for doing so, e.g., a legislative or regulatory change, a judicial decision concerning a related or analogous issue, or changes in the social or economic context surrounding the decision. *See United States v. Dickerson*, 705 F.3d 683, 689 (7th Cir. 2013). Goodwin does not present any argument that could generously be described as responding to new or changed conditions. Instead, he argues that the Supreme Court's reversal of *Dixon* on grounds having nothing to do with nondelegation "should call into question" the continued validity of *Dixon* as precedent concerning the constitutionality of SORNA on nondelegation grounds. We think that the opposite conclusion is

more sensible. Since the *Carr* Court expressly declined to comment on our finding in *Dixon* that SORNA does not violate the Constitution, *Dixon* remains good law on this issue. *See Carr*, 130 S. Ct. at 2242 n.2 (noting that SORNA delegates authority to the Attorney General, and expressly stated that the Court "does not address the validity of this regulation"). Thus, *Dixon*'s continued applicability presents an additional impediment to Goodwin's nondelegation claim.

### B.  *The Term of Supervisory Release*

In challenging the lifetime restriction of his supervised release, Goodwin calls our attention to the section of the Presentence Report (PSR) concerning supervised release. This section states that the Guidelines advise a supervisory period of five years to life for Goodwin's offense, citing two Guidelines provisions, U.S.S.G. § 5D1.2(b)(2) and (c), for this proposition. Based on this supposed authority, the report recommends a life term of supervision. Goodwin argues that U.S.S.G. § 5D1.2(b)(2) is inapplicable to his offense, that the report erroneously relied on this Guideline in recommending a life term of supervised release, and that the district court's sentencing him to a life term of supervised release under the incorrect assumption that this sentence was within the advisory Guidelines constitutes plain error. The government agrees.

The district court did not announce the advisory Guideline range from which it chose the lifetime term, but it did indicate in the written judgment that the PSR was

accepted "without change." So we assume that the five years to life range advised in the PSR played a role in the district court's decision.

Goodwin did not object below to either the district court's receipt of a report containing this alleged error or to the court's later imposition of a life term of supervised release following this incorrect calculation. Since we cannot think of any reason why Goodwin would deliberately remain silent concerning a miscalculation that led to the imposition of the longest possible term of supervised release, we consider his objection on appeal to be forfeited, not waived. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 849 (7th Cir. 2005) ("Forfeiture occurs because of neglect while waiver happens intentionally."). Accordingly, we review this aspect of the district court's sentencing decision for plain error. *See United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010).

Under the plain-error standard, we will reverse the district court's sentencing determination "only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *Id.*

According to Goodwin, the PSR contains two closely related errors; the report cites the allegedly inapplicable U.S.S.G. § 5D1.2(b)(2) in its determination of the advisory Guidelines range for supervised release, and, based in part on this citation, the report allegedly miscalculates the advisory Guidelines range. This Guideline provides for a maximum life term of supervised release

for "a sex offense." U.S.S.G. § 5D1.2(b)(2). Thus, the applicability of this provision hinges on whether Goodwin's failure to register under 18 U.S.C. § 2250 qualifies as a sex offense. As noted, the government, in conceding error, indicates that it shares Goodwin's understanding of this Guideline. We were initially concerned that the government's concession of error might have been incorrect, but a closer examination of this problem reveals that neither the Guideline nor its commentary provide a basis for concluding that the advisory Guidelines range for Goodwin's offense extends to a life term.

To determine whether failure to register should be classified as a sex offense, we first look to Application Note 1 to U.S.S.G. § 5D1.2. This note defines a sex offense as a crime "perpetrated against a minor" under, *inter alia*, chapter 109B of Title 18. The only offense listed in chapter 109B is failure to register, 18 U.S.C. § 2250, which is Goodwin's offense.

The phrasing of this Application Note suggests that a failure to register under SORNA could be considered an offense "perpetrated against a minor" under certain circumstances. Otherwise, the inclusion of chapter 109B of Title 18 in the Application Note would be surplusage. But how are courts to determine whether a given failure to register was perpetrated against a minor? The Guidelines and their commentary offer no assistance.

Perhaps the Note means to say that if the original offense that gave rise to the registration requirement

were perpetrated against a minor, then the subsequent offense of failure to register should be considered a sex offense.[2] Although such a rule arguably would be sensible, it cannot be derived from the language of the Guideline and it would be purely a judicial creation. The Application Note does not provide a clear statement that the Sentencing Commission had such a purpose in mind.

It seems to us that the application of the term "perpetrated against a minor" to *any* failure to register stretches this term past its breaking point. In Goodwin's case, there was no specific victim of his failure to register, and the victim of the sex offense for which he was convicted was nine years old at the time of the

---

[2] This interpretation is consistent with the practice of two of our sister circuits, which have applied this Guideline—without explanation, and in unpublished opinions—to failures to register where the original offense was perpetrated against a minor. *See United States v. Zeiders*, 440 F. App'x 699 (11th Cir. 2011); *United States v. Nelson*, 400 F. App'x 781 (4th Cir. 2010). This practice, however, is hardly universal. *See United States v. Herbert*, 428 F. App'x 37 (2d Cir. 2011) (finding that a defendant's failure to register was not a sex offense under U.S.S.G. § 5D1.2(b)(2); the defendant's original crime was committed against two minors, according to Appellee Br., 2010 WL 4815032 at *3); *see also United States v. Maxwell*, 483 F. App'x 233, 236 n.1 (6th Cir. 2012) (noting that "[t]here is some basis" for the defendant's argument "that his failure to update his sex offender registration does not constitute a 'sex offense' as defined by [U.S.S.G. § 5D1.2]," but finding this argument to be waived).

offense, and, therefore, had reached the age of majority by 2008 when Goodwin failed to register in Illinois. Thus, it seems incorrect to claim that Goodwin committed his failure to register "against a minor."

Instead of ignoring or placing conditions on the Application Note's reference to chapter 109B of Title 18, would it be more sensible to read the phrase "perpetrated against a minor" out of the Note? This interpretation would place *all* failures to register within the purview of U.S.S.G. § 5D1.2, eliminating the task of determining how a failure to register could be perpetrated against a minor. But ignoring the phrase "perpetrated against a minor" with respect to chapter 109B of Title 18 seemingly also would require us to ignore this phrase with respect to all of the other statutory provisions that are listed in the Note. These include offenses for which it is relatively easy to determine whether a minor was victimized and rational to advise harsher penalties to offenses perpetrated against minors. *See, e.g.*, 18 U.S.C. § 1201 (kidnapping). Consequently, reading the phrase "perpetrated against a minor" out of the Note would greatly expand the application of U.S.S.G. § 5D1.2 to these other listed offenses. We have no indication that the Commission intended this result, and are unwilling to infer an intent to do so based solely on the flimsy argument that the phrase "perpetrated against a minor" is surplusage.

Although we ordinarily grant "controlling weight" to the Sentencing Commission's interpretations of its own Guidelines, as expressed in the Commission's Applica-

tion Notes, we do not defer to interpretations that are "plainly erroneous or inconsistent" with the relevant Guideline, federal law, or the Constitution. *See United States v. Raupp*, 677 F.3d 756, 759 (7th Cir. 2012) (quoting *Stinson v. United States*, 508 U.S. 36, 44-45 (1993)). Here, the illogic of the implication that registration offenses can be perpetrated against minors indicates that, to the extent that the Note purports to include failures to register as sex offenses, this portion of the Note is plainly erroneous as a definition of "sex offense" for purposes of U.S.S.G. § 5D1.2(b)(2). Moreover, the Note is inconsistent with definitions of "sex offense" elsewhere in the U.S. Code, *see, e.g.,* 18 U.S.C. § 3559(e)(2)(A) (defining "Federal sex offense" by referring to a set of crimes, all of which clearly involve child victims), and is equally inconsistent with the definition of "child crimes and sexual offenses" elsewhere in the Guidelines, *see, e.g.,* Application Note 4(A) to U.S.S.G. § 5K2.0. Thus, we do not defer to this Note's unclear definition of "sex offense." If the Commission does in fact consider some failures to register to be sex offenses, it should say so plainly, and provide courts with guidance as to which failures to register qualify. Moreover, as a portion of the Adam Walsh Act, 18 U.S.C. § 3583(k), mandates that registry violations should be eligible for lifetime terms of supervised release regardless of whether they involve a minor victim, the Guidelines should explain the circumstances under which that outcome is within range.

Since nothing about Goodwin's failure to register demonstrates that it is a sex offense—and since neither the Sentencing Commission nor the district court

provides a rationale for the contrary position—U.S.S.G. § 5D1.2(b)(2) does not apply. The PSR's citation to U.S.S.G. § 5D1.2(b)(2) and miscalculation of the advisory Guidelines range as five years to life, based on this citation, were therefore in error. Instead, the properly calculated advisory Guidelines "range" for Goodwin's offense appears to actually be a point: five years.

To see why, note first that the Guidelines advise a term of supervised release of between one and three years for Goodwin's offense. *See* U.S.S.G. § 5D1.2(a)(2) (setting this range for Class C felonies); *see also* 18 U.S.C. 3559(a)(3) (applying the Class C label to felonies for which the maximum term of imprisonment is between ten and twenty-five years); 18 U.S.C. § 2250(a) (mandating a ten-year maximum term of imprisonment for failure to register as a sex offender). This advisory Guidelines range, however, conflicts with the statutory mandate that individuals convicted of Goodwin's offense receive a mandatory sentence of no less than five years of supervised release. 18 U.S.C. § 3583(k). Where, as here, the statutory minimum term of supervised release is greater than the top end of the Guidelines range of § 5D1.2(a)(2), the statutory minimum controls. U.S.S.G. § 5D1.2(c); *cf. United States v. Gibbs*, 578 F.3d 694, 695 (7th Cir. 2009) ("[T]he statutory minimum term of supervised release defines either the bottom limit of the advisory Guidelines range or the entire range (if it coincides with the top of the Guidelines range)."). Thus, the entire Guidelines "range" becomes the statutory minimum of five years—not five years to life, as the PSR erroneously states. Before we move forward, though, we note that

this conclusion even leaves U.S.S.G. § 5D1.2(c) unfulfilled, because it indicates that the supervised release term "shall be not less than" the statutorily required term. It does not say that it "shall be equal to" that required minimum term, but that is the required result here.

Having shown that the district court plainly erred in its adoption of the PSR's erroneous calculation of the advisory Guidelines range for Goodwin's term of supervised release, we turn to examining whether this error affected Goodwin's substantial rights. *See Anderson*, 604 F.3d at 1001. District courts should treat the Guidelines "as the starting point and the initial benchmark" in sentencing determinations. *Gall v. United States*, 552 U.S. 38, 49 (2007). In addition, in reviewing sentences we apply a rebuttable presumption of reasonableness to within-Guidelines sentences. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also Rita v. United States*, 551 U.S. 338, 347 (2007) (holding that courts of appeals may apply such a presumption post-*Booker*). Given the important role that the Guidelines play both in the imposition and in the review of sentences, we find that the district court's adoption of an incorrect Guidelines range affected Goodwin's substantial rights.

Finally, the plain error here "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012). Here, the district court imposed a life term of supervised release after having received a report recommending this sentence. Although

the district court did not specifically cite the report or the Guidelines in explaining the length of supervised release that it imposed during Goodwin's sentencing hearing, it is no stretch to infer that the PSR's recommended life term of supervised release impacted the court's imposition of a life term. We have found in similar circumstances that such errors impact the fundamental fairness of sentencing hearings. *See, e.g., United States v. Garrett*, 528 F.3d 525, 530 (7th Cir. 2008) ("[W]e have no reason to believe [the district court's] error in the application of the Guidelines did not affect its selection of the particular sentence . . . and the resulting prejudice to [the defendant] justifies remand for resentencing."). Moreover, while Goodwin failed to notice the error in district court, "so did . . . the Assistant United States Attorney, the probation officer, and the district court judge, and . . . it would be unjust to place the entire burden for these oversights on [him]." *Jaimes-Jaimes*, 406 F.3d at 851. Thus, these errors concerning the application of the advisory Guidelines warrant resentencing.

As Section II.C., *infra*, explains, we also are remanding with instructions that the district court reassess the imposition of special conditions on Goodwin's supervised release. This remand on the special conditions provides an additional reason for the district court to reconsider the length of Goodwin's supervised release. Since the district court's determinations regarding the length of the supervisory period and any conditions imposed on Goodwin during this period may involve interrelated decisions, a reassessment of one of these elements

may provide cause for giving a second look to the entire supervisory regime.

We also note that in reaching the conclusion that errors concerning the application of U.S.S.G. § 5D1.2(b)(2) warrant resentencing, we do not mean to imply that the district court is not authorized to impose a lifetime term of supervised release. Obviously, 18 U.S.C. § 3583(k) clearly authorizes any term of years from five to life. Rather, we are stating that if on remand the district court imposes a supervised release term greater than five years, this term will have to be explained by something other than the currently available five-year Guidelines range.

## C. *Special Conditions*

Finally, Goodwin objects to the district court's imposition of four special conditions—labeled Conditions 4, 5, 6, and 7, above—during his period of supervised release. The government agrees that Conditions 4, 6, and 7 should be vacated, but argues that the district court did not plainly err in imposing Condition 5.

A district court may impose special conditions of supervised release, provided that these conditions meet three requirements. First, post-release conditions must be reasonably related to the penological purposes set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). *See* 18 U.S.C. § 3583(d). Specifically, special conditions "must be reasonably related to (1) the defendant's offense, history and characteristics; (2) the need for ade-

quate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment." *United States v. Angle*, 598 F.3d 352, 360-61 (7th Cir. 2010); *see also* 18 U.S.C. § 3553(a)(1)-(2). Second, special conditions cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, incapacitation, and rehabilitation. *United States v. Holm*, 326 F.3d 872, 876 (7th Cir. 2003); *see also* 18 U.S.C. § 3583(d)(2). Third, the conditions must be "consistent with any pertinent statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3).

In assessing the appropriateness of special conditions, it also is useful to consider the rehabilitative objectives that supervised release serves. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Placing "unduly harsh conditions [on supervised release] would, instead of facilitating an offender's transition back into the everyday life of the community, be a significant barrier to a full reentry into society." *United States v. Perazza-Mercado*, 553 F.3d 65, 71 (1st Cir. 2009) (quotation marks and citation omitted).

### 1. Standard of Review

Goodwin did not object to the imposition of these conditions. The parties dispute the effect of this failure to object on our standard of review, with the government arguing that plain-error review for forfeited claims

ought to apply, *see United States v. Tejeda*, 476 F.3d 471, 474 (7th Cir. 2007), and Goodwin countering that his lack of notice that the district court would impose these conditions absolves him of the responsibility to object in order to avoid plain-error review on appeal.

The government claims that, in order to preserve claimed error on appeal under Federal Rule of Criminal Procedure 51, a party must object *before* the district court makes its ruling, or, where the party did not have an opportunity to object beforehand, only if the party raised the issue *at the time of* the ruling. *United States v. Brown*, 662 F.3d 457, 461 n.1 (7th Cir. 2011), *cert. granted, judgment vacated sub nom. Vance v. United States*, 133 S. Ct. 65 (2012); *see also United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) (stating that Rule 51(b) "requires a protest immediately after the ruling if the litigant did not have an opportunity to argue the point earlier"). According to the government, such an ex post objection would not be considered an unnecessary exception to a ruling under Rule 51(a) because in order for Rule 51(a) to apply, the party must have already raised its claim *before* the ruling. *See Brown*, 662 F.3d at 461 n.1.

In response, Goodwin calls our attention to our statement in *United States v. Courtland*: "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." 642 F.3d 545, 547 (7th Cir. 2011) (quoting Fed. R. Crim. P. 51(b)). In this case, neither the PSR nor the addendum to it mentioned any potential conditions on

Goodwin's supervised release. In fact, there is nothing in the record that indicates that Goodwin could have expected that the district court would impose special conditions prior to its doing so. Given this lack of opportunity, Goodwin argues that a less deferential abuse of discretion standard ought to apply to our review of this issue.

We need not resolve whether plain-error review (as *Brown* and *Bartlett* would suggest) or review for abuse of discretion (as per *Courtland*) applies in these circumstances, since we find that the special conditions must be vacated under either standard.

### 2. Condition 4

Condition 4 deals mostly with Goodwin's physical property, requiring him to install internet monitoring software on his computers; to submit to searches of his person, car, computer, and other property; and to allow his computer equipment to be removed for more thorough examinations, among other requirements. We consider the computer-related terms of this condition first. We fail to see how these broad restrictions are reasonably related to Goodwin's offense, history, and personal characteristics. The record does not indicate that a computer played any role in either the instant offense for failure to register or his 1994 conviction for an attempted lewd and lascivious act in the presence of child. *Cf. United States v. Freeman*, 316 F.3d 386, 392 (3d Cir. 2003) (vacating a condition barring all access to the internet as overly broad, where there

was no indication that the defendant had used the internet to contact children). Nor is there any indication in the record that Goodwin has ever used a computer to commit any crime. Although we stop short of stating that such restrictions could never be appropriate in these circumstances, our skepticism leads us to conclude that the district court must provide some justification for these particular conditions.

Condition 4 also requires that Goodwin submit to warrantless searches of his person and property by his probation officer, as well the potential seizure—temporary, presumably—of his computer equipment for supplemental inspections. Given the nature of Goodwin's convictions, we are once again at a loss to see how this broad search and seizure authority is connected to Goodwin's offense, history, and personal characteristics, or how it is reasonably necessary to furthering the deterrence, public protection, and rehabilitative goals articulated in 18 U.S.C. § 3583(d)(2). *See United States v. Monteiro,* 270 F.3d 465, 473 (7th Cir. 2001) (vacating a seizure-related special condition, based on an inability to "discern from this record the reason why the district court was of the view that such broad authority to seize was required to ensure that the ends of rehabilitation and protection of the public were met."). Accordingly, we vacate this condition.

### 3. Condition 5

Condition 5 prohibits Goodwin from having any contact with minors, except in the presence of an adult

who is aware of Goodwin's prior sex offense and who has been approved by the probation department. We are skeptical that such a sweeping condition could be reasonably related to Goodwin's offense, history and characteristics, particularly since there is no evidence in the record of any incidents involving minors in the almost two decades since Goodwin's 1994 conviction. Moreover, given the potentially severe restrictions on Goodwin's day-to-day life that this condition imposes, the district court's lack of explanation of why it thinks this condition involves no greater deprivation of liberty than necessary to achieve the penological goals stated in 18 U.S.C. § 3553(a) is troubling.

The government responds by noting that district courts have the discretion to impose special conditions barring contact with minors where the immediate offense, as with Goodwin's failure-to-register offense, does not involve contact with minors. But district courts' ability to impose no-contact conditions does not absolve them of their responsibility to explain why such conditions are warranted in particular cases. Furthermore, while we agree that such a condition may be appropriate in certain circumstances, we caution that these circumstances are less common than the government suggests. Tellingly, in over six pages of discussion of case law concerning no-contact provisions, the government cites only one case from our circuit: *United States v. Musso*, 643 F.3d 566 (7th Cir. 2011). In *Musso*, we upheld the imposition of a no-contact condition where the defendant's immediate offense—the violation of his original terms of supervised release following a con-

viction for possession of child pornography—was not a sex crime. *Id.* at 571. But Musso's violation of his original terms of supervised release involved him having prolonged contact with a minor, so the re-imposition of this no-contact provision following the revocation of Musso's supervised release can be viewed as an extension of his original sentence for crimes involving a child victim. Moreover, all of the cases from our sister circuits that the government cites involve much more serious offenses than Goodwin's failure-to-register violation stemming from a conviction for an attempted lewd and lascivious act in the presence of child. *See, e.g.*, *United States v. Zobel*, 696 F.3d 558 (6th Cir. 2012) (upholding no-contact provision where defendant had knowingly coerced and enticed minors to engage in sexual activity); *United States v. Bee*, 162 F.3d 1232 (9th Cir. 1998) (upholding no-contact provision where defendant had sexually abused a six-year-old).

Given that Goodwin's instant offense does not involve a child victim and that his offense history, while troubling, does not rise to the level of those offenders in the cases that the government cites, it is not clear why the district court imposed this no-contact condition. Because the district court has not provided any explanation of how this condition is reasonably related to Goodwin's offense and background or to the goals of punishment, involving no greater deprivation of liberty than is reasonably necessary to achieve these goals, we vacate the condition.

### 4. Condition 6

Similarly, the record before us contains insufficient support for the imposition of Condition 6, which prohibits Goodwin from possessing material that, *inter alia*, "depicts or alludes to sexual activity." Goodwin's failure to register under SORNA has nothing to do with material depicting or alluding to sexual activity. Moreover, there is nothing in the record that sheds light on a hypothetical connection between Goodwin's 1994 conviction or other past acts and such material. Thus, it is unclear how this condition is reasonably related to any of the considerations set forth in 18 U.S.C. § 3583(d). *Cf. Perazza-Mercado*, 553 F.3d at 67 (holding that a district court committed plain error by imposing, without explanation, a special condition banning the possession of pornography, where the record did not show a connection between the defendant's conviction for unlawful sexual contact with a minor and pornographic material).

The inclusion of material that "alludes to" sexual activity within Condition 6's purview is particularly problematic. This dictate goes beyond a ban on the possession of pornography. If read literally, the inclusion of this term could block Goodwin from possessing much of the Western literary canon—or arguably even from possessing a slip copy of this opinion. Such a deprivation of liberty certainly would be greater than is reasonably necessarily to achieve the goals of supervised release. This vague term therefore provides an additional reason for vacation of Condition 6. *See Monteiro*, 270 F.3d at 473 (vacating a "vague and

overbroad" special condition to enable the district court "to craft more precisely" the condition).

### 5. Condition 7

Condition 7 places content restrictions on Goodwin's use of the internet. The portion of this condition regarding the use of the internet to send, receive, or view child pornography seems justifiable, given Goodwin's 1994 conviction for an attempted lewd and lascivious act in the presence of child. (It is also redundant, since another section of the judgment in this case directs that Goodwin "shall not commit another federal, state, or local crime" while on supervised release, a standard provision.) Still, the nexus between Goodwin's history and this section of Condition 7 does not absolve the district court of the responsibility to provide an explanation for all special conditions imposed.

The sections of Condition 7 that prohibit Goodwin from receiving or sending any sexually arousing material that is otherwise legal—e.g., depictions of adults—via the internet or from visiting "any website, including chat rooms or bulletin boards containing any sexually arousing material" give us greater pause. These prohibitions can be considered internet-specific versions of Condition 6's prohibition on the possession of material that "contains nudity or . . . depicts or alludes to sexual activity or depicts sexually arousing material." Thus, this portion of Condition 7 suffers from the same overbreadth and vagueness concerns as we noted con-

cerning Condition 6. We vacate Condition 7 for similar reasons.

Goodwin argues that his deprivation of expressive material under Conditions 6 & 7 violates his First Amendment rights. Since we vacate these conditions on other grounds, we need not reach this constitutional question. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (19836) (Brandeis, J., concurring).

### 6. Other Conditions

Goodwin's objections to the special conditions that the district court imposed focus exclusively on Conditions 4-7. We wonder why he has not objected to Conditions 8 and 10 as well. These two conditions require him to participate (at his own expense) in sex offender treatment and mental health counseling, respectively, "as deemed necessary by the probation officer." As with the other special conditions, the district court imposed these conditions without explanation.

We note once again that each special condition imposed must be tailored to Goodwin and his needs, *see Angle*, 598 F.3d at 360-61, and involve no greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, protection of the public, and rehabilitation, *see Holm*, 326 F.3d at 876. Given that Goodwin's instant offense is for a failure to register, the penological purpose of these treatment and counseling programs is far from clear.

Courts of appeals ordinarily abstain from considering issues *sua sponte*. *See Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012). Nonetheless, "[w]hen in a criminal appeal the court of appeals notices a plain error, it can reverse even if the appellant had not drawn the error to the court's attention." *United States v. Gutierrez-Ceja*, 711 F.3d 780, 784 (7th Cir. 2013). Here, we are unable to discern any connection between Goodwin's offense and the purposes that sex offender treatment and mental health counseling typically serve. Thus, Conditions 8 and 10 require additional consideration on remand, for similar reasons as explained in our discussion of Conditions 4-7.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Goodwin's conviction, VACATE the supervised release portion of his sentence, and REMAND to the district court for resentencing consistent with this opinion. The resentencing shall be limited to a reassessment of the length of Goodwin's supervised release and any special conditions imposed during this period.