In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1961

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY S. CARY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 11-CR-10054 — **Joe B. McDade**, *Judge.*

ARGUED NOVEMBER 4, 2014 — DECIDED JANUARY 6, 2015

Before MANION, WILLIAMS, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Jeremy S. Cary pleaded guilty to one count of failing to register as a sex offender. The district court sentenced him to thirty-three months' imprisonment. Cary now appeals, challenging various special conditions of his supervised release. We affirm in part, vacate in part, and remand with the direction that the district court amend Cary's conditions of supervised release consistent with this opinion. A hearing on the nature and scope of the computer monitoring

and filtering software and sexually oriented websites Cary is prohibited from accessing will be necessary on remand.

## I. Background

Jeremy Cary first became involved in the criminal justice system at the age of fifteen when he was placed on court supervision for battery after touching the buttocks of a woman. He subsequently dropped out of high school and found work washing dishes and bussing tables at restaurants. Simultaneously, he began abusing alcohol (up to ten beers a day) and hard drugs (powder cocaine, crack, and Ecstacy). He was diagnosed as cannabis- and alcohol-dependent while receiving services at a treatment center, and was ultimately asked to leave after threatening and intimidating staff and other patients.

Things escalated on June 11, 2009, when at the age of twenty-five, Cary had sexual intercourse with a minor under the age of seventeen. In March 2010, he pleaded guilty to aggravated criminal sexual abuse. In April 2010, he registered as a sex offender in Illinois. Over the next few months he pleaded guilty to unrelated charges of theft and domestic battery (for which he served time). He was released from jail in August 2010 and by early 2011, had moved to Florida with a married woman and assumed her husband's identity. However, he did not report his departure from Illinois to law enforcement authorities, nor did he register as a sex offender upon his arrival in Florida. This decision violated both the Illinois sex offender registry law and the Sex Offender Registration and Notification Act (SORNA), which makes it a felony

for a sex offender knowingly to fail to register following an interstate move. 18 U.S.C. § 2250.

On May 6, 2011, Cary was found crouching in the dark and peering into the windows of a sorority house on a university campus. He was arrested and pleaded guilty to prowling. The prosecution for failure to register as a sex offender underlying this appeal was then initiated.

## II.

### Procedural history of Cary's federal prosecution

In June 2011, Cary was indicted by a federal grand jury for knowingly failing to register and update a registration as a sex offender, as required by the SORNA. *See* 18 U.S.C. §2250(a). He pleaded guilty. In December 2011, the district court sentenced him to a within-Guidelines sentence of thirty-three months' imprisonment and imposed a twenty-year term of supervised release. This included the standard conditions of supervised release as well as number of special conditions. Cary then filed a habeas corpus petition challenging his counsel's failure to properly calculate the Guidelines. In February 2013, the district court granted Cary's petition and, in April 2013, it resentenced him to time served, reduced the term of his supervised release to ten years, and reimposed the standard and some special conditions of that supervised release. Cary was then released into a half-way house.

In July 2013, because of complaints by the half-way house's manager, Cary's probation officer petitioned the district court to revoke Cary's supervised release based on his unmonitored use of a computer and his failure to attend sex offender

treatment. In September 2013, the district court held a revocation hearing wherein Cary admitted to the alleged violations. He was sentenced to an above-Guidelines sentence of eighteen months and his term of supervised release was reduced from ten to five years. The court then reimposed the special conditions of his supervised release. In November 2013, Cary filed a second petition for habeas corpus directed at his second attorney's ineffective assistance because he did not appeal the revocation judgment. In April 2014, the district court held a hearing on Cary's petition, granted it, and vacated the September 2013 revocation judgment. The district court then reimposed the identical judgment, sentence, and conditions of supervised release that it had imposed in September 2013.

Cary now appeals, challenging various conditions of the supervised release reimposed on him at the April 2014 hearing and that he will be subject to for five years upon his release from prison.

### III. Analysis

#### A. Standard of review

We have several times declined to decide whether the standard of review for a supervised release condition imposed at sentencing without prior notice is plain error or abuse of discretion. *See, e.g., United States v. Goodwin,* 717 F.3d 511, 522 (7th Cir. 2013); *United States v. Shannon,* 743 F.3d 496, 499 (7th Cir. 2014). In *Goodwin,* for example, we recalled that Fed. R. Crim. P. 51(b) says: "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." 717 F.3d at 522. Since the defendant in *Goodwin* did not have prior knowledge that the

conditions would be imposed, he maintained plain error review should not apply. *Id.* at 522–23. Our subsequent decision in *United States v. Baker,* 755 F.3d 515 (7th Cir. 2014), did not recognize the prior tension in our case law or address Fed. R. Crim. P. 51(b). And a week after *Baker,* we ruled in another supervised release case that "[a]s in *Shannon* and *Goodwin*, we leave for another day the decision on the proper standard of review" because the outcome would be the same either way. *United States v. Farmer*, 755 F.3d 849, 854 (7th Cir. 2014).

At sentencing in this case, Cary "admittedly did not object to the imposition of any of the conditions of his supervised release at the [d]istrict [c]ourt level." Appellant Br. 10. To the contrary, in lieu of imprisonment, Cary invited the district court to "amplify these restrictions … [to] keep[] him on a much shorter leash." And, indeed, nearly all of the conditions at issue were previously imposed on him in 2011, so he was generally on notice of what they entailed. Under these circumstances, we review only for plain error. The plain error standard of review is "remarkably demanding" for an appellant to overcome. *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006). To correct a plain error, the appellant must establish that there is: "(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *Goodwin,* 717 F.3d at 518 (quoting *United States v. Anderson,* 604 F.3d 997, 1001 (7th Cir. 2010)).

### B. Special conditions of supervised release

"Reducing recidivism is the main purpose of supervised release." *United States v. Siegel,* 753 F.3d 705, 708 (7th Cir. 2014). The general conditions of supervised release are outlined in 18 U.S.C. § 3583(d). But those conditions are a guide, not a limit on the types of conditions a district court—upon sufficient findings of fact—may impose on an offender's conditional liberty. In furtherance of the Sentencing Commission's goal of reducing recidivism, a district court may impose discretionary or special conditions of supervised release at sentencing, but those conditions "must: (1) be reasonably related to the factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) be consistent with the policy statements issued by the Sentencing Commission." *United States v. Evans,* 727 F.3d 730, 733 (7th Cir. 2013) (citation and internal quotations omitted). "Policies emphasized by the Sentencing Commission include deterrence, rehabilitation, and protecting the public." *Id.* A sentencing judge must "give a reason, consistent with the sentencing factors in §3553(a), for every discretionary part of the sentence … including any non-mandatory conditions of supervised release." *United States v. Bryant,* 754 F.3d 443, 444–45 (7th Cir. 2014). In short, "the terms of supervised release must be reasonably related to the goals of sentencing—deterrence, rehabilitation, and protecting the public—in light of the history and characteristics of the defendant." *Evans,* 727 F.3d at 731.

Because Cary conceded his violations at his revocation hearing, *see* Tr. 4-5, and he has not appealed his sentence, the scope of this appeal is limited to the various special conditions of supervised release he will be subject to upon his release from prison.

### 1. Special condition No. 1 – ban on any alcohol and mood-altering substances

As a mandatory condition of supervised release, Guideline § 5D1.3(c)(7) prohibits the "excessive use of alcohol." Here, Cary challenges a special condition that reads, in pertinent part, that he "shall refrain from the use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or mood altering substance." Cary's challenge to this provision is two-fold and directed at the prohibitions against his consumption of alcohol (a complete ban) and mood-altering substances. Appellant Br. 43.

### a. Ban on alcohol

We previously upheld a complete ban on the consumption of alcohol when such a condition was supported by evidence in the record. *United States v. Schave,* 186 F.3d 839, 842 (7th Cir. 1999) ("[T]he district court here had specific evidence of [the defendant's] prior alcohol abuse, including a prior diagnosis of alcoholism, upon which to reply in imposing the alcohol restriction."). But that is not Cary's argument. In this case, Cary argues that the prohibition against alcohol should be vacated because it was not pronounced by the court at Cary's sentencing hearing and was imposed only in the written judgment. Cary argues that "when an inconsistency exists between a judge's oral and the later written sentence, the sentence

pronounced from the bench controls." *United States v. Perry*, 743 F.3d 238, 242 (7th Cir. 2014) (citation and internal quotations omitted). The government responds by referencing record evidence where Cary's own testimony makes clear that he has a debilitating problem with alcohol abuse. Gov't Br. 18. However, we need not delve further into those details, nor do we need to decide whether the evidence in the record was sufficient for the district court to prohibit Cary's consumption of any alcohol because Cary withdrew his challenge to this condition at oral argument. Oral Arg. Tr. 3:17 ("We're conceding the alcohol, judge."). Because a "verbal admission by [] counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings," we will affirm the special condition that prohibits Cary from consuming alcohol. *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002).

### b. Mood-altering substances

For its part, the government concedes that the district court's oral pronouncement included no mention of the phrase "mood-altering substance." We recently described some of the potential complications that this ambiguous phrase may create for defendants—indeed, "[v]arious innocuous foods, vitamins, and beverages … may be 'mood altering.'" *United States v. Baker*, 755 F.3d 515, 523 (7th Cir. 2014); *United States v. Siegel,* 753 F.3d 705, 715 (7th Cir. 2014). While the best practice for district courts is to impose language prohibiting "*illegal* mood-altering substances," the problem with the phrase included in this instance is that it appears for the first time in this record on the list of special conditions imposed after the district court's

oral rulings. Accordingly, we will follow our earlier decision in *Baker* and remand this issue to the district court with the direction that the prohibition against imbibing "mood-altering substances" be removed from condition no. 1 of Cary's special conditions. 755 F.3d at 523–24.

### 2. *Special condition No. 3 – required participation in sex-offender treatment*

Guideline § 5D1.3(d)(7)(A) authorizes as a special condition of supervised release "a condition requiring the defendant to participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders." Cary challenges the imposition of special condition no. 3, which reads, in pertinent part, that he "shall participate in a sex offender treatment program as deemed necessary by the U.S. Probation Office." Cary argues that this "provision only applies to 'sex offenses' and a SORNA conviction is not a 'sex offense.'" Appellant Br. 16-17. Cary is half-correct. We have previously held—consistent with some circuits, but not with others—that a SORNA conviction arising from a "failure to register is not a 'sex offense' for purposes of U.S.S.G. § 5D1.2(b)(2)." *United States v. Baker*, 755 F.3d 515, 522 (7th Cir. 2014); *United States v. Goodwin,* 717 F.3d 511, 519 n.2 (7th Cir. 2013). But Cary is wrong that a district court may only impose a condition requiring sex offender treatment incident to a sex offense conviction. *See United States v. Evans,* 727 F.3d 730, 735 (7th Cir. 2013). The rule from *Evans* controls. There we held that "sex-offender treatment is reasonably related to the factors in § 3553(a), even if the offense of conviction is not a sex offense, so long as the sexual offenses are recent enough in the defendant's history that the goals of rehabilitation and protect-

ing the public justify an order for treatment." 727 F.3d at 735; *see also United States v. Carter,* 463 F.3d 526, 530 n.5 (6th Cir. 2006) (explaining that § 5D1.3(d) does not restrict sex offender treatment condition to sex offenses).

Here, Cary was convicted of aggravated criminal sexual abuse only five years ago and an uncontested fact giving rise to his revocation hearing was that he failed to complete sex offender treatment ordered incident to his SORNA conviction. And it is difficult to ignore the fact that Cary was taken into custody after he was arrested for peeping into the windows of a sorority house in the middle of the night. Although sorority girls are typically not minors, this illegal and perverted behavior does not reflect the conduct of a person in control of his sexual urges. These facts at hand, the district court stated at sentencing that it "believe[d] that there's a substantial likelihood [Cary] will continue to act out [his] predispositions in having sexual contacts … with underage females." Tr. 36. With the sex offender treatment, the court hoped that Cary would "come to terms" with the fact that he is a sex offender and will begin "living an acceptable life." Tr. 38. Here, the district court explained the reasons for its conclusion that Cary was not yet rehabilitated from his illegal sexual proclivities and was in need of sex offender treatment. This case fits squarely within the boundaries of *Evans.* We bear in mind that Cary's failure to complete this course of treatment was a principal basis for the revocation of his supervised release resulting in the imposition of the special conditions on review today. The district court did not commit plain error—or any error—by requiring him to complete sex offender treatment. Accordingly, we will affirm

the imposition of that treatment as part of Cary's special conditions of supervised release.

### 3. *Special condition No. 6 – computer and internet monitoring*

Cary raises two challenges to special condition no. 6, which requires him to "participate with the U.S. Probation Office's Computer and Internet Monitoring Program" and "install filtering software on any computer [he] possesses or use[s] which will monitor/block access to sexually oriented websites." He argues that it is vague, overbroad, and stricter than the computer monitoring condition that he labored under as a special condition resulting from his SORNA conviction, which monitored and blocked only child pornography websites. He also asserts that it fails for a lack of adequate evidentiary foundation because "there was no discussion or rationale presented by the court for its imposition." Appellant Br. 32. The government concedes that "the software filtering requirement should be vacated so that the court may clarify precisely what websites should be monitored and blocked." Gov't Br. 25. Accordingly, we vacate this special condition and remand to allow the district court to define more precisely the limitations.

While we remand for this purpose, we note that Cary is incorrect in his argument that the district court ban on his access to sexually oriented sites is necessarily too broad because it prohibits him from accessing or viewing adult pornography on the internet. Cary is correct that special condition no. 5, which barred him from viewing "illegal pornography," did not prohibit him from viewing (legal) adult pornography. Cary also correctly notes that adult pornogra-

phy, unlike child pornography, generally has First Amendment protection. *United States v. Shannon,* 743 F.3d 496, 500 (7th Cir. 2014). But an offender on supervised release has no unmitigated First Amendment right to view adult pornography *on the internet*, particularly when he is permitted to view it through other mediums like television or in magazines. That we have upheld complete bans on activities as special conditions of supervised release (including a ban on internet use) informs this conclusion. *See, e.g., United States v. Angle,* 598 F.3d 352, 361 (7th Cir. 2010) (affirming ban on personal use of the internet as a special condition of supervised release because of the connection between the offender's use of the internet and his child pornography-related criminal activity); *Schave,* 186 F.3d at 842 (affirming complete prohibition on the use of alcohol when supported by the record); *see also United States v. Brigham,* 569 F.3d 220, 234 (5th Cir. 2009) (affirming the imposition of a three-year ban on possession of "pornographic sexually oriented or sexually stimulating materials" where the offender's sex offender treatment counselor testified that even sexually explicit images of adults would reinforce the offender's previous behavior).

Further, on remand, the sentencing court must give a reason for imposing this special condition of supervised release. *Bryant,* 754 F.3d at 445. We recently addressed the need of a sentencing court to provide its reasoning for imposing a special condition of supervised release that required a sex offender to obtain and pay for filtering software to block his access to sexually oriented websites. *United States v. Siegel,* 753 F.3d 705, 714 (7th Cir. 2014). After addressing numerous other deficiencies in the sentencing court's findings, we "remanded

for reconsideration of the conditions of supervised release that we have determined to be inappropriate, inadequately defined, or imposed without the sentencing judges having justified them by reference to the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* at 717. To be clear, *Siegel* did not establish a bright-line rule for sex offenders' access to sexually oriented websites or materials. It is a case about sentencing court discretion and the record evidence necessary for certain special conditions of supervised release to withstand appellate scrutiny. *See Siegel,* 753 F.3d at 707–08, 710–11.

We acknowledge that this is a "challenging area" of law that is developing daily. *United States v. Adkins*, 743 F.3d 176, 194 (7th Cir. 2014). And we recognize that the circuits are replete with fact-intensive cases reflecting a broad range of uncertainty about whether and which sex-based special conditions will be upheld or struck down. *Id.* at 194–95 (collecting cases from other circuits reaching various outcomes where special conditions banned access to sexual materials). However, one consistent theme emerges from these cases—a sentencing court must buttress its conclusions with factual findings to support them. *See, e.g., Bryant,* 754 F.3d at 444–45; *Siegel,* 753 F.3d at 707–08, 710–11. Accordingly, on remand the district court must also provide an adequate explanation for any internet ban it imposes—and any such ban must be defined to some degree of precision. *Cf.* 18 U.S.C. § 2256(2)(B) (defining "sexually explicit conduct").

### 4. *Special condition No. 9 – mental health services*

Cary disputes that he should be subject to mental health counseling and treatment and that he take all prescribed

medications as directed by the U.S. Probation Office. He argues that "while the district court may have discussed the fact that [he] has been diagnosed with mental health issues, that acknowledgment alone is insufficient to [require the imposition of this condition]." Appellant Br. 35. The facts in the record dispatch this argument.

When the district court offered Cary the opportunity to make a statement in mitigation, he accepted, and chose to focus his remarks exclusively on his hope for an order recommitting him to mental health services treatment so that he could obtain medication he believed was necessary for his rehabilitation at a reduced cost or for free. The district court inquired of Cary's medication history during his previous incarceration. The court also asked whether the Department of Corrections' mental health services issued Cary a continuing prescription for medication upon discharge, and Cary confirmed that it did not. During sentencing, the district court ordered that Cary "[t]ake this medication." Tr. 37. The district court then recounted for the record that Cary had been diagnosed with a mental illness while in the custody of the Department of Corrections and was given medication. *Id.* The court then concluded that he "should receive treatment" for his illness. *Id.* Finally, the court accommodated Cary's request and pronounced this special condition.

Both Cary's request for mental health services and the district court's inquiry into Cary's mental health history prior to ordering the mental health services Cary himself requested are each independent reasons for us to reject Cary's change of tune on appeal. We will not second-guess conditions of supervised release imposed consistent with an offender's request in the district court. By asking for the very condition

the court subsequently imposed, Cary waived any argument against it. *See United States v. Hible,* 700 F.3d 958, 961 (7th Cir. 2012). Because the district court did not commit plain error by imposing psychiatric services and mental health counseling and treatment and the requirement that Cary take all pre-scribed medications as directed by treatment providers, we will affirm the imposition of special condition no. 9.

### 5. *Payment provisions of special conditions 1, 6, & 9*

Finally, Cary argues that he should not be required to pay the costs associated with certain special conditions. Cary argues that we "should relieve Mr. Cary of the obligation to pay for any of his treatment requirements." Appellant Br. 44. Conditions 1, 6, and 9 of the written judgment require that Cary "shall pay for [the costs of] these services as directed by probation offices."

Title 18 U.S.C. § 3672 provides that:

> [t]he Director of Administrative Office of the United States Courts … shall have the authority to contract with any appropriate public or private agency or person for the detection of and care in the community of an offender who is an alcohol-dependent person … . This authority shall include the authority to provide … psychological … services; and other rehabilitative services designed to protect the public and benefit the alcohol-dependent person … .

This provision goes on to state that "[w]henever the court finds that funds are available for payment by or on behalf of a

person furnished such services … the court may direct that such funds be paid to the Director." *Id*.

A sentencing judge is "empower[ed] … to impose as a condition of such release any condition authorized as a discretionary condition of probation plus 'any other condition it considers to be appropriate.'" 18 U.S.C. § 3583(d). We held in *United States v. Daddato* that this language is "broad enough to encompass the requirement that [a] defendant make good the government's 'buy money.'" 996 F.2d 903, 904 (7th Cir. 1993). Cary protests that "if he is unable to pay, who knows what might happen?" Appellant Br. 20. This concern is overstated. While the conditions as presently written do not forewarn Cary of what consequences may follow if he fails to comply, we held most recently in *Baker* and earlier in *Siegel* that a "defendant may not be recommitted to prison 'for a mere inability to pay.'" *Baker*, 755 F.3d at 529 (quoting *Siegel*, 753 F.3d at 714). However, that we will not recommit a defendant to prison for failure to pay does not mean that a sentencing judge may not impose upon an offender the obligation to do so if he or she is able. *See United States v. Hinds*, 770 F.3d 658, 666 (7th Cir. 2014) (acknowledging a district court's authority to impose a payment condition for substance abuse treatment and drug testing); *United States v. Williams*, 739 F.3d 1064, 1067 (7th Cir. 2014) (citing 18 U.S.C. § 3583(d) to hold that repayment condition was authorized because it serves a penological function through incentivizing offenders to succeed with their rehabilitative efforts).

Here, the district court found that Cary is "an offender who is an alcohol-dependent person" and is in need of "psychologi-

cal … services."  Because the governing statute "authorizes a district court to impose a payment condition for substance abuse treatment" on such a person if he is financially able to do so, the district court did not commit plain error in imposing repayment conditions on Cary in connection with the alcohol and mental health services he was ordered to receive. *Hinds,* 770 F.3d at 666 (quoting 18 U.S.C. § 3672); *see also United States v. Bull,* 214 F.3d 1275, 1278 (11th Cir. 2000) (holding that district court did not clearly err by imposing a payment requirement for mental health treatment while considering the offender's ability to pay).

But that is not the end of it. Although we have just concluded that title 18 U.S.C. § 3672 affords district courts the discretion to require that offenders repay the government for rehabilitative services furnished to them if they are financially able to do so, the problem with applying traditional fact-finding practices to predict offenders' future financial circumstances is that the conclusions are speculative. To avoid this speculation while remaining faithful to the fact-finding requirement imposed by 18 U.S.C. § 3672, the best practice for district courts to follow is to incorporate language into the special condition that requires the offender to pay for the costs of rehabilitative services *if financially able* to do so. *See, e.g., Hinds,* 770 F.3d at 666; *Baker,* 755 F.3d at 529; *Siegel,* 753 F.3d at 714.

The district court did not do that here. So despite affirming the substance of special condition nos. 1 and 9, because the district court made no findings about Cary's financial circumstances before it imposed mandatory repayment requirements on him, these special conditions must be remanded to the

district court for this limited purpose. If the district court, on this limited remand, elects to order the imposition of a conditional repayment plan on any of the special conditions imposed on Cary, it should incorporate the phrase "if financially able" or a similar phrase to the last sentence of the applicable special conditions in the judgment. *Hinds,* 770 F.3d at 666 (remanding because the district court failed to make a determination "based on the offender's financial resources" before imposing a special condition). We need not address payment responsibilities in connection with condition no. 6 because we have vacated it.

### IV. Conclusion

In sum: (a) special condition no. 1 is affirmed in part and remanded for the limited purpose of removing the phrase concerning "mood-altering substances" and imposing the phrase "if financially able" or a similar phrase; (b) special condition no. 3 is affirmed; (c) special condition no. 6 is vacated and remanded for a hearing on the nature and scope of the computer monitoring and filtering software and sexually oriented websites Cary is prohibited from accessing while on supervised release; and (d) special condition no. 9 is vacated and remanded for the imposition of the phrase "if financially able" or a similar phrase. Accordingly, the judgment of the district court is AFFIRMED IN PART and VACATED IN PART and this case is REMANDED to the district court for proceedings consistent with this opinion.