In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1641

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROY BAKER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:12-cr-10035-MMM-JAG-1 — **Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 12, 2013 — DECIDED JUNE 17, 2014

Before ROVNER and SYKES, *Circuit Judges*, and DURKIN, *District Judge*.*

DURKIN, *District Judge*. Individuals convicted of sex offenses are required under federal and state law to register as

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation.

a sex offender with the local law enforcement agency where they reside. Roy Baker has repeatedly chosen to ignore this requirement since the first time he sexually assaulted a woman in 1982. This habit caught up to him for the third time in May 2012 when he pled guilty to a single count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). The district judge sentenced Baker to 77 months' imprisonment, followed by a life term of supervised release. The judge also imposed eight special conditions of supervised release. Baker now challenges the length of his supervised release term and four of those special conditions. The government agrees that the supervised release term and some special conditions should be vacated. For the following reasons, Baker's sentence is affirmed in part and vacated in part.

## BACKGROUND

### I. Baker's Underlying Conduct

Baker was convicted of criminal sexual assault in Chicago, Illinois, in January 1982 and July 1983, and sentenced to concurrent 8-year prison terms. He was released on parole in 1986, and within three months of that release, kidnapped, threatened, and sexually assaulted two other women. For those state offenses, Baker received concurrent 28-year prison sentences.

Baker was released from prison on parole in 2000 but later taken back into custody in 2002 to serve a 2-year prison term for a state aggravated fleeing offense. Upon his subsequent parole release in March 2003, Baker was told to register as a sex offender. He did not, and was convicted in March 2004 in an Illinois state court for failing to register as

a sex offender. He received a 30-month term of probation, though he later violated his probation and went to jail for 6 months. Baker completed his probation sentence in 2007.

In April 2007, Baker sought employment with a restaurant in the food court of an Illinois shopping mall. He claimed that he had no prior felony convictions—a lie he later acknowledged was necessary in order to secure employment.

Baker continued to work at the restaurant until he was fired in December 2007 as a result of conduct involving two underage girls. On December 6 or 7, 2007, Baker invited two 14-year old girls to join him in the back area of the restaurant. He proceeded to ask the girls sexual questions and if they would engage in explicit sexual activity with him. Frightened, the girls left the area but not before Baker gave one of them his phone number. The next day, one of the girls—who were together at the time—called Baker and pretended to be the other girl. Baker repeated his desire to engage in sexual relations with the girl, but the conversation went no further. That was the last time Baker ever spoke with the girls. Nevertheless, one of the girl's mothers became aware of the incident and contacted police. The police investigated the complaint, which led to the discovery of Baker's extensive criminal history and prompted Baker's employer to fire him. For reasons unknown, the state's attorney's office handling the matter declined to prosecute the case.

Baker was involved in various state criminal matters over the next four years, including a domestic violence incident for which no charges were filed, an arrest for violating bail bond, and an arrest for driving with a suspended license and illegally transporting alcohol. Then, in February 2011, Baker

committed a second state sex offender registration violation by failing to report his employment at a new restaurant. Baker was incarcerated and later released on bond in March 2011. A condition of Baker's release required him to participate in a substance-abuse treatment program, for which he checked into a residential program. Baker was discharged from that program unsuccessfully after failing to attend drug treatment and testing positive for alcohol. Baker pled guilty to the state failure to register charge in November 2011, and had his sentencing date scheduled for February 3, 2012.

Another condition of Baker's March 2011 release was to refrain from visiting social networking or dating websites. Baker ignored this and used the alias "Rob Baker" to create a profile on a dating website that included his photo and other personal identifying information. Doing this allowed Baker to begin an online relationship in November 2011 with a woman who lived in Michigan. The pair eventually became close, and Baker moved to Michigan to live with the woman and her children, ages 8 and 12. Baker informed the woman of his sex offender status, and she showed him the local Michigan police station where Baker needed to register. Again, Baker not only made the conscious decision to not register, but he also lied and told the woman that he had. He also did not clear his departure from Illinois with the proper Illinois authorities.

Baker's February 3, 2012 sentencing date on the second failure to register charge came and went without a word from Baker. A warrant for his arrest was issued on February 8, 2012, after Illinois authorities discovered Baker was two months late in reporting for sex offender registration and

had failed to update his new address. Shortly thereafter, on February 22, a police officer stopped Baker in Michigan for speeding. The officer discovered the arrest warrant and immediately took Baker into custody, where Baker was processed and later transported back to Illinois.

On March 21, 2012, a federal grand jury in Peoria, Illinois, returned a one-count indictment charging Baker with violating the Sex Offender Registration and Notification Act ("SORNA") by traveling interstate and failing to register or update his registration as a sex offender. *See* 18 U.S.C. § 2250(a). Baker pled guilty to the charge on May 31, 2012, without the benefit of a plea agreement.

## II. Sentencing

The U.S. Probation Office prepared a presentence investigation report ("PSR") for the district court. The total offense level was a 13 with a criminal history category of VI, making the guidelines range 33 to 41 months' imprisonment, *see* U.S.S.G. § 5C1.1(f), with a 10-year statutory maximum. The PSR noted that this might under-represent Baker's criminal history because the 1982 and 1983 sexual assault convictions were too old to be counted, and Baker was never charged for the incident at the mall restaurant. The PSR also noted that the applicable supervised release term was 5 years to life, citing 18 U.S.C. § 3583(k). Lastly, the Probation Office sent the parties a letter describing eight special conditions that it would recommend as part of Baker's supervised release.

The government filed a sentencing memorandum and advocated for the statutory maximum term of imprisonment, noting the restaurant incident, Baker's false employ-

ment applications, and the fact Baker erroneously told the woman he met online that he had completed his sex offender registration in Michigan. Baker opposed the government's request for an upward departure and a life term of supervised release, as well as objected to six of the proposed special conditions of release, including a ban on alcohol; participation in an internet monitoring program; a ban on contact with minors, including his own minor children;[1] and a provision requiring him to participate in a sex offender treatment program.

Baker's sentencing hearing occurred over the course of two days in January 2013. On day one, the government presented the testimony of four witnesses in aggravation. They included the district manager of Baker's employer at the time of the restaurant incident, the two young girls Baker solicited for sexual relations at the restaurant, and the police detective who investigated the incident. On day two, the district court began by addressing Baker's objections to the PSR. Regarding the term of supervised release, the sentencing judge stated, "So, it is my belief that the range available to me is 5 years to life." The judge next addressed Baker's objections to the conditions of supervised release, overruling all of them but modifying the internet-monitoring condition to say that the software should only block access to "adult rape-related websites and child pornography websites."

The district judge then proceeded to announce Baker's sentence. Adopting the factual findings and guidelines cal-

---

[1] The PSR listed Baker as having three minor children: an 8-year old, a 20-month old, and a 6-month old.

culation contained in the PSR, the judge announced an upward departure from the guidelines range and imposed a 77-month prison term, to be followed by a life term of supervised release. Each of the eight special conditions of release was also imposed. The written judgment listed the four conditions at issue on appeal (i.e., conditions 1, 3, 4, and 8) as follows:

1. You shall refrain from any use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or mood altering substance or any paraphernalia related to any controlled substance or mood altering substance, except as prescribed by a physician. You shall, at the direction of the probation officer, participate in a program for substance abuse treatment including not more than six tests per month to determine whether you have used controlled substances and or alcohol. You shall pay for these services as directed by the probation office.

* * *

3. You shall participate with the U.S. Probation Office's Computer and Internet Monitoring Program (CIMP) during your term of supervision. The monitoring program will start as soon as possible after your supervision term begins. You shall sign the rules of the Computer Internet and Monitoring Program and comply with the conditions of this program. During this time:

A. You shall install filtering software on any computer you possess or use which will monitor/block

access to adult rape[-]related websites and child pornography websites. You shall allow the probation officer unannounced access to any computer you possess or use to verify that the filtering software is functional. You shall pay for the cost of the filtering software as directed by the probation officer.

\* \* \*

4. You shall have no contact with any person under the age of 18, except in the presence of a responsible adult who is aware of the nature of your background and current offense, and who has been approved by the probation officer. This limitation applies to the defendant's children but is not intended to interfere with any ruling by a state court that has jurisdiction over the children.

\* \* \*

8. You shall participate in a sex offender treatment program as deemed necessary by the probation office. You shall pay for such services as directed by the U.S. Probation Office. … .

The judge orally declared that Baker should pay for the drug abuse treatment, the filtering software, and the sex-offender treatment "as directed," although he did not specify by whom, as it did in the written order which specified the "probation office," the "probation officer" and the "U.S. Probation Office." Furthermore, when discussing condition 1 at the sentencing hearing, the judge did not say anything about a ban on "mood altering substance[s]" even though the phrase appears in the written order.

## DISCUSSION

Baker's appeal is two-fold. He first challenges the supervised release term, contending that the life term must be vacated because it was based on an improper guidelines range, and in any event, the district judge did not adequately explain why it was necessary. His second challenge is to four of the special conditions the judge imposed. He contends the district judge abused his discretion in imposing the four challenged conditions, as well as erred in having terms in the written order that differ from the terms announced at sentencing.

### I. Supervised Release Term

A procedural error during sentencing may form the basis for reversal. "To avoid procedural error, sentencing judges must correctly calculate the guidelines range, evaluate the factors in 18 U.S.C. § 3553(a), and rely on properly supported facts." *United States v. Chapman*, 694 F.3d 908, 913 (7th Cir. 2012). We review *de novo* whether a guidelines range was properly calculated. *United States v. Sandoval*, 747 F.3d 464, 467 (7th Cir. 2014). We also review *de novo* whether a judge adequately explained his chosen sentence so as to permit appellate review. *United States v. Poulin*, 745 F.3d 796, 800 (7th Cir. 2014).

Both sides acknowledge that the guidelines range in the PSR, which the district judge adopted, was incorrect. As explained in *United States v. Goodwin*, 717 F.3d 511, 520 (7th Cir. 2013), a failure to register is not a "sex offense" for purposes of U.S.S.G. § 5D1.2(b)(2), so the "range" for Baker's supervised release term should have been the statutory term of 5

years—no more, no less. It should not have been "5 years to life"; that was a procedural error. *See Goodwin*, 717 F.3d at 520.

In some cases, such an error may be harmless when the sentencing judge otherwise provides an explanation that would adequately support the chosen supervised release term, correct guidelines range or not. *See United States v. Gulley*, 722 F.3d 901, 910 (7th Cir. 2013) ("The issue before us is … whether we are convinced the judge would have imposed the same sentence but for the procedural error."). However, when a judge imposes an above-guidelines range sentence but does not precisely explain why the departure was reasonable and necessary in light of the 18 U.S.C. §3553(a) factors, we cannot presume the error was harmless. *See United States v. Tovar-Pina*, 713 F.3d 1143, 1148 (7th Cir. 2013). The sentencing judge here did not elaborate on why he thought an above-guidelines supervised release term was necessary. He simply stated, "Following your release from custody, you shall serve a lifetime term of supervised release." This explanation is insufficient to support the life term. *See Poulin*, 745 F.3d at 802 (explaining that the supervised release term should be vacated because the judge "did not provide any reasons for why he felt a life term … was appropriate"). The explanation is also insufficient for us to be certain the procedural error here was harmless. We therefore vacate Baker's supervised release term and remand for resentencing using the correct guidelines term of 5 years. On remand, the judge will also have the opportunity to more fully explain his chosen supervised release term, which of course can be more or less than 5 years with appropriate explanation.

## II. Special Conditions of Release

Baker challenges special condition 1—the ban on any alcohol and mood altering substances; condition 3—the computer and internet monitoring requirement; condition 4—the prohibition on unsupervised contact with children, including his own; and condition 8—the sex-offender treatment program requirement. He also challenges the payment provision in conditions 1, 3, and 8.

When a sentencing judge modifies the original conditions of supervised release and in turn imposes new discretionary conditions on a defendant, the special conditions "must (1) be reasonably related to the factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) [be] consistent with the policy statements issued by the Sentencing Commission." *United States v. Evans*, 727 F.3d 730, 733 (7th Cir. 2013) (internal quotation marks omitted) (alteration in *Evans*). The judge has broad discretion when imposing special conditions, so we only review the judge's decision for an abuse of discretion when the defendant objects to a given condition. *United States v. Neal*, 662 F.3d 936, 938 (7th Cir. 2011). If a defendant fails to object in the district court, however, we review the challenge on appeal solely for plain error. *United States v. Wolfe*, 701 F.3d 1206, 1211 (7th Cir. 2012).

### A. Ban on Any Alcohol & Mood Altering Substances

Baker first points out that the oral pronouncement of special condition 1 did not include the phrase "or mood al-

tering substance." The government admits in its response that "mood altering substance" seemingly refers to something that is not "alcohol" or a "controlled substance," which were the only provisions of condition 1 discussed at the sentencing hearing. This would also include various innocuous foods, vitamins, and beverages, all of which may be "mood altering." Accordingly, the phrase is inconsistent with the terms of the condition that the judge orally pronounced at the sentencing, and in such a situation, the sentence pronounced from the bench controls. *See United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005) ("The rule in such situations is clear: 'If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls.'" (quoting *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998)). The extraneous language in the written order (i.e., "or mood altering substance") must be removed from special condition 1.

The crux of Baker's argument regarding special condition 1, however, is the ban on *any* alcohol. Indeed, Baker acknowledges that a ban on *excessive* use of alcohol would be appropriate. He simply does not believe that the record supports a conclusion that he is addicted to alcohol or completely dependent upon its use, such that an absolute prohibition is appropriate. *See United States v. Simons*, 614 F.3d 475, 480–81 (8th Cir. 2010) (explaining that the court has vacated a special condition involving a complete ban on alcohol "where the defendant's history or crime of conviction did not support [it]"). The government agrees with that assessment, conceding that Baker has abused alcohol in the past but that there is no evidence that Baker's alcohol use has contributed to his repeated criminal conduct or that Baker is dependent on alcohol. In light of that concession, we need

not provide a full analysis explaining why a complete ban is inappropriate here. *Cf. United States v. Schave*, 186 F.3d 839, 842–43 (7th Cir. 1999) (holding that the district court did not abuse its discretion in imposing a special condition that banned all alcohol use). We do note though that some limitation on Baker's use of alcohol is proper because Baker has been cited for illegal transportation of alcohol on two occasions, Baker told the presentence investigator that he consumed a six-pack of beer or more twice per week, and Baker's breath tested positive for alcohol on two days in August 2011 while he was participating in a substance-abuse treatment program while on pre-trial release. These instances demonstrate that Baker has abused alcohol in the past, so a condition barring him from consuming "certain" amounts of alcohol in the future involves no greater deprivation of liberty than is reasonably necessary.

The question remains as to what amount of alcohol Baker should abstain from consuming. Both parties previously agreed that a condition simply prohibiting "excessive" use of alcohol, rather than "any" use, would be sufficient. That was before we decided *United States v. Siegel*, ___ F.3d ___, 2014 WL 2210762 (7th Cir. May 29, 2014). In *Siegel*, we vacated conditions of supervised release requiring the defendant to refrain from "excessive use of alcohol" and from purchasing any "mood altering substance (excluding coffee, tea, and soda)" because they were unduly vague. *Id.* at *9. Our conclusion requiring "mood altering substance" to be deleted from condition 1 removes the question of the phrase's legitimacy from our consideration here. But as to the issue of whether the prohibition of "excessive" use of alcohol, without more, is appropriate, we do not believe so—even if the parties agreed to it. As we noted in *Siegel*, there are different

definitions of what constitutes excessive use of alcohol. *See id.* at 10. Whether *excessive* constitutes the violation of any local, state, or federal law as a result of alcohol use; encompasses any use that "adversely affects" one's employment, relationships, or ability to comply with the conditions of supervision; or involves something specific to a particular individual in a given day (e.g., a male defendant consuming more than four drinks in a sitting), that is not for us to decide at this point. Nevertheless, a condition prohibiting a defendant from "excessive" use of alcohol, without any further guidance or direction, will not pass muster. On remand, the judge should specify what constitutes excessive use of alcohol as to Baker.

Finally, although not addressed by either party, we highlight the fact that condition 1 requires Baker to undergo "not more than six tests per month to determine whether [he has] used controlled substances and/or alcohol." As was the case with defendant Norfleet in *Siegel*, Baker is *allowed* to consume alcohol. So, the exact purpose of these tests, at least as to Baker's use of alcohol, is unknown. *See id.* at *10 ("Presumably the purpose of the tests is to see how much [the defendant has] consumed, but the statement of conditions of supervised release doesn't say that."). Whatever the answer is, we believe this involves questions best left to the sentencing judge and the Probation Office—e.g., whether a test for alcohol is necessary to determine whether Baker has consumed a prohibited amount of alcohol, regardless of how the amount is defined; or how frequently any such test should occur.

We vacate condition 1 and remand for further consideration of the issues discussed, noting that a restriction on

Baker's use of alcohol is proper if reasonably tailored and defined.

### B.  Computer & Internet Monitoring

Special condition 3 requires Baker to "participate with the U.S. Probation Office's Computer and Internet Monitoring Program" and "install filtering software on any computer [he] posseses or use[s] which will monitor/block access to adult rape[-]related sites and child pornography." The government concedes that the filtering software provision should be vacated. Baker nevertheless challenges the entirety of condition 3 on the ground that there is not a sufficient nexus between Baker's use of a computer and corresponding internet surfing, and the commission of a crime. Indeed, Baker was only convicted of a single count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). This is a conviction that in no way requires, or is facilitated through, the use of a computer. The government disagrees, focusing on the fact that Baker used a dating website to establish an online—and later, in-person—relationship with a woman living in another state. It contends that Baker's move from Illinois was what precipitated Baker's failure to register conviction and that this would not have occurred but for Baker's use of the computer. It further contends that Baker's use of an alias on the dating website demonstrates Baker had an ulterior motive when accessing the internet. With that backdrop, the government believes the Probation Office should be allowed to monitor Baker's computer usage.

The government's argument is weak, as even the sentencing judge noted that the evidence supporting that condition was "barely enough." Baker has to register as a sex offender wherever he goes. To agree with the government's conten-

tion, we would have to assume for a moment that Baker could not have established a relationship with the woman through more traditional means. Only then would it be possible to say Baker's use of the internet was what led to his move, assuming the move was essentially the cause of the violation. Here, it was Baker's intent to live with the out-of-state woman he was communicating with that ultimately led to the move. This could have occurred through any number of ways that did not involve a computer.

Moreover, whatever the reason for Baker's move from Illinois to Michigan, the move would not necessarily have led to a conviction for failing to register. It wasn't simply the move that caused Baker to be in violation of the law. Rather, it was Baker's conscious, intentional decision to flout his legal obligation to report for registration and update his address. If Baker had found employment through a website such as Linkedin or CareerBuilder, moved to Michigan or any other state, and failed to register there, Baker could have been convicted of the exact same offense at issue here. In that situation, it would be illogical to link Baker's use of the computer to find a job with a subsequent conviction for failing to register. The same is true here. Nothing about Baker's use of his computer or the internet was illegal. And the government has not tied Baker's quest on the internet to find a dating partner to Baker's prior affinity towards inappropriate sexual conduct or to any attempt to evade his registration obligations. The government even concedes in its brief that Baker accessed the website for a lawful purpose.

Furthermore, one may not infer any improper motive from the simple fact Baker utilized a dating website. Their use is neither uncommon nor untoward. Baker may have

used a pseudonym or alias on the website ("Rob Baker" instead of "Roy Baker"), which the government says lends support to a possible improper purpose. But a person might initially use a pseudonym on a dating website for any number of reasons, including initial privacy or the desire to hide one's identity from acquaintances who also might be on the website. That is arguably no different than applying for a job anonymously or even through a recruiter. Baker told the woman that he was a sex offender (granted, he may have minimized the offense), and as previously stated, there is no evidence linking Baker's use of the alias on the website with an intent to avoid his registration requirements. Thus, the fact Baker used a pseudonym on the website cannot be the sole rationale for the computer monitoring requirement. Without more, the imposition of condition 3 was an abuse of discretion.

### C. Unsupervised Contact with Children

Special condition 4 bars Baker from having unsupervised contact with children, including his own, unless a state court judge enters an order allowing otherwise. It essentially encompasses two groups: Baker's minor children and minors in general. The issue of no-contact conditions has been discussed at length by this Court, in addition to other circuits across the country. *See, e.g.*, *Goodwin*, 717 F.3d at 523–24 (vacating a no-contact condition because the district court did not provide an explanation as to why it was reasonably related to the defendant's offense and background); *United States v. Zobel*, 696 F.3d 558, 564–65, 574–75 (6th Cir. 2012) (upholding a no-contact condition where the defendant knowingly coerced and enticed minors through online chatting and text messages to engage in sexual activity); *Simons*,

614 F.3d at 481–82 (upholding a condition that allowed the defendant to have contact with minors, including his own children, if he obtained his probation officer's consent); *United States v. Rodriguez*, 558 F.3d 408, 417–18 (5th Cir. 2009) (affirming a special condition involving a complete ban on unsupervised contact with minors, including the defendant's two minor children). The government concedes that the ban on supervised contact with Baker's own children should be vacated, noting that there is no evidence that Baker has abused or attempted to abuse his own children, or that he is a danger to his own family. *Cf. United States v. Lonjose*, 663 F.3d 1292, 1302–03 (10th Cir. 2011) (recognizing "a fundamental right of familial association" and vacating a condition prohibiting the defendant from having contact with his minor son and other minor relatives unless he received advance permission from his probation officer). We therefore vacate special condition 4. On remand, the judge should also consider the scope of the condition and Baker's argument that an exception should be included "for commercial business and in cases of incidental or unintentional conduct" with minors in general.

### D. Sex-Offender Treatment Program

Baker contends that condition 8, which requires him to complete a sex-offender treatment program, is not reasonably related to the nature and circumstances of his offense, as required by 18 U.S.C. § 3583(d)(1). In support, he again directs us to *Goodwin*. In *Goodwin*, this Court *sua sponte* vacated a condition requiring the defendant to undergo sex offender treatment because the defendant's offense (failure to register as a sex offender) did not have "any connection" to "the purposes that sex offender treatment and mental health

counseling typically serve." 717 F.3d at 525–26. The obvious difference between *Goodwin* and this case, however, is the restaurant incident with the two minor girls. Even Baker acknowledges this is a "plausible distinction," which is not to be taken lightly.

We are confronted with the question of whether the purposes of sex offender treatment have "any connection" to Baker's failure to register offense. Individuals who have been convicted of sex offenses are required to register as sex offenders for a number of reasons not limited to protecting the safety of others. *See* 42 U.S.C. § 16901 (explaining that the purpose of SORNA is "to protect the public from sex offenders and offenders against children, and [to] respon[d] to the vicious attacks by violent predators"). Sex offender treatment may not be warranted in many cases where the base offense is a failure to register, but recent conduct demonstrating a propensity to commit sex offenses would seem to always provide a justification for the condition. *See United States v. Evans*, 727 F.3d 730, 733–34 (7th Cir. 2013) ("Even if there is no substantive connection between the crime of punishment and the defendant's sexual misconduct, the sexual misconduct may be so *recent* or *prominent* in the defendant's behavior that a sentencing court aiming to protect the public and rehabilitate the defendant would be entitled to address it.") (emphasis added); *see also United States v. Morales-Cruz*, 712 F.3d 71, 74 (1st Cir. 2013) ("[S]ex offender treatment may be imposed in a case in which the underlying crime in not a sex offense."); *United States v. Hahn*, 551 F.3d 977, 984 (10th Cir. 2008) ("[N]othing in [18 U.S.C. § 3583(d)] limits the special condition of sex-offender treatment to defendants under prosecution for sex crimes.") (alteration in *Hahn*). The incident in late 2007 may have occurred roughly four years be-

fore the failure to register conduct and five years before Baker was sentenced, but to say that it is "outdated," as Baker contends, is not accurate. Baker has spent most of his life incarcerated, and he engaged in the 2007 conduct not long after he was released from prison. This fact significantly increases the temporal connection between the time of the conduct and the time of Baker's base offense here.

Baker attempts to further distinguish *Evans* on the ground that his 2007 conduct did not result in an arrest. That is not dispositive. The facts regarding Baker's conduct are disturbing. Baker reached out to minor girls, engaged in explicit sexual conversations with them, took them to an area of isolation, and solicited sexual activity with them at a later date. This is a *prominent* example of the defendant's behavioral history. *See Evans*, 727 F.3d at 734. That no arrest or prosecution followed Baker's actions does not indicate the events did not occur as the girls testified at the sentencing hearing. The judge implicitly found their testimony to be credible by relying on it when making his sentencing determinations. The judge also was not merely relying on a bare-bones, unsubstantiated police report. Accordingly, that Baker was not arrested or prosecuted for his 2007 conduct did not prohibit the sentencing judge from considering the testimony as evidence of Baker's history and characteristics, which are important considerations when imposing a special condition. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Jones*, 635 F.3d 909, 917 (7th Cir. 2011) ("In arriving at an appropriate sentence, 'a judge may appropriately con-

duct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.'" (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972))); *see also Neal*, 662 F.3d at 938–939 ("The district judge properly considered [the defendant's] history and character, noting that he smoked marijuana on a daily basis in the past, had used illegal substances in 1999 and 2000 before he was arrested, and had used cocaine prior to his incarceration."). Nor does it take this case beyond the purview of our reasoning in *Evans.* We find that the temporal connection between the 2007 incident and the failure to register offense (which the sentencing judge thought was "recent enough"), coupled with the gravity of Baker's conduct, created a sufficient nexus between Baker's conduct and the § 3553(a) factors for the sentencing judge to impose the sex-offender treatment condition. *See Evans*, 727 F.3d at 735.

Baker's alternative argument is that the sex-offender treatment condition involves a greater deprivation of liberty than necessary because the judge did not limit how long Baker is required to undergo treatment. This argument is grounded in the fact that the judge imposed a life term of supervised release; so conceivably, Baker could be required to attend sex-offender treatment for the rest of his life. Indeed, as we have explained, certain conditions of release "may require strong justification when extended for a lifetime." *United States v. Quinn*, 698 F.3d 651, 652–53 (7th Cir. 2012) ("The judge also should consider the possibility of setting sunset dates for some of the more onerous terms, so [the defendant] can regain more control of his own activities without needing a public official's advance approval, while enough supervision remains to allow intervention should [the defendant] relapse."). But the basic premise of Baker's

argument has been addressed; we have already held that Baker's term of supervised release must be vacated because it was based on an improper guidelines range. On remand, the sentencing judge will be able to address the length of Baker's supervised release, which in turn affects the length of the sex-offender treatment requirement. Baker's argument on this point is moot.

### E.  Payment Provision of Conditions 1, 3 & 8

Conditions 1, 3, and 8 of the written judgment require Baker to pay for the costs or services of the particular condition "as directed" by "the probation office," "the probation officer," and "the U.S. Probation Office," respectively.[2] The conditions do not specify what will happen if Baker bears the burden of paying and is unable to do so. *Siegel*, 2014 WL 2210762, at *8 ("Nothing is said about what happens if he can't pay the entire cost. Will his supervised release be revoked because he won't be complying with the conditions in question in their entirety? Or will the government pay for them? It must mean the latter … ."). This is problematic because conditions of supervised release must make clear what conduct is prohibited, *see United States v. Preacely*, 702 F.3d

---

[2] Any argument that the payment conditions should be vacated because the written judgment, explicitly stating the entity or official who can direct Baker to pay, is inconsistent with the oral pronouncement, which only says "as directed" without specifying by whom, is unavailing. The specifications in the written judgment clarify the oral pronouncement; they are not inconsistent with an unambiguous provision. *See United States v. Bonanno*, 146 F.3d 502, 511–12 (7th Cir. 1998); *see also United States v. Zepeda*, 329 Fed. Appx. 647, 649 (7th Cir. 2009) (stating that "an oral pronouncement of sentence, if unambiguous, controls over a conflicting written one").

373, 376 (7th Cir. 2012), as well as the scope of the provi-sions. *See Siegel*, 2014 WL 2210762, at *11 (vacating a special condition because the sentencing did not make clear that the behavior therapy program it required the defendant to com-plete would not necessarily have to continue for the entire supervised release term); *see also United States v. Monteiro*, 270 F.3d 465, 473 (7th Cir. 2001) (vacating a "vague and overbroad" special condition so the sentencing judge could "craft more precisely" its terms). A defendant may not be recommitted to prison "for mere inability to pay," *Siegel*, 2014 WL 2210762, at *11, and the conditions should account for the possibility of Baker failing to satisfy any payment re-quirement imposed. This deficiency is an error that the judge must address on remand.[3] It is unnecessary for us to address Baker's alternative arguments.

## CONCLUSION

We VACATE Baker's supervised release term, special conditions 1 and 4, and the payment provision in conditions 1, 3, and 8; and REMAND for resentencing consistent with this opinion. We AFFIRM Baker's prison term and all of the other terms in the special conditions imposed.

---

[3] The government contends our review of the condition is confined to plain error because Baker did not specifically object to the part of the conditions requiring him to pay. *See United States v. Fluker*, 698 F.3d 988, 1003 (7th Cir. 2012). The deficiency we have identified is a reversible er-ror, regardless of which standard of review is applied. *See Goodwin*, 717 F.3d at 522–23 (declining to resolve the issue of whether plain-error re-view or review for abuse of discretion applied because the special condi-tions were required to be vacated under either standard).