COURT OF APPEALS
DECISION
DATED AND FILED

August 11, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1437-CR**

Cir. Ct. No. **2014CF1106**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

FREDERICK A. ZIESMER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Eau Claire County: JOHN F. MANYDEEDS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Following a jury trial, Frederick Ziesmer was convicted of repeated sexual assault of the same child. The victim of that offense

was Ziesmer's stepdaughter Claire.[1] As a condition of Ziesmer's extended supervision, the circuit court ordered that he have no contact with any minor children, including his biological daughter, Iris. The court subsequently denied Ziesmer's postconviction motion, which sought to modify that condition to allow him to have contact with Iris.

¶2 On appeal, Ziesmer argues the circuit court erroneously exercised its discretion by prohibiting him from having contact with Iris as a condition of his extended supervision, and that the court erred by denying his postconviction motion to modify the no-contact condition without a hearing. Ziesmer also argues that the no-contact provision impermissibly infringes on his constitutional right to parent his child. We reject these arguments and affirm.

## BACKGROUND

¶3 In November 2014, Ziesmer was arrested and charged with repeated sexual assault of Claire, who was then fifteen years old. Claire told police that the assaults occurred from 2012 until June 2014, while Claire was in sixth, seventh, and eighth grades. At the time of the assaults, Claire would have been twelve to fourteen years old.

¶4 Following his arrest, Ziesmer was released on signature bond with a condition stating he could have no contact with Claire or any other children at her residence, and no unsupervised contact with any other minors. In February 2015, Ziesmer's bond was modified to specifically permit contact with Iris if it was

---

[1] For ease of reading, we use pseudonyms when referring to the victim and to Ziesmer's biological daughter.

supervised by Iris's mother, who was also Claire's mother and Ziesmer's then-wife. Iris was four years old at the time of that modification.

¶5 In May 2015, Ziesmer pled no contest to a single count of second-degree sexual assault of a child. He was sentenced to nine years' initial confinement and eleven years' extended supervision. As a condition of his extended supervision, he was ordered to have no contact with Claire and "[n]o unsupervised contact with any minor children, to include his own children and grandchildren."

¶6 Ziesmer was subsequently allowed to withdraw his no-contest plea, and the original charge against him was reinstated. While awaiting trial on that charge, Ziesmer was again released on bond and permitted to have contact with Iris, if it was supervised by Iris's mother.

¶7 Ziesmer's case was tried to a jury in March 2018. At trial, Claire testified that Ziesmer sexually assaulted her twice when she was in sixth grade, two or three times when she was in seventh grade, and about two times while she was in eighth grade. Other evidence at trial showed that when police interviewed Ziesmer about Claire's allegations, he admitted that he had touched Claire's breasts and vagina on one occasion and her breast on another occasion.

¶8 In his trial testimony, Ziesmer denied sexually assaulting Claire and asserted that when he told police he had done so, he was merely recounting events that happened in a dream. Ziesmer also testified at trial that Claire was seven or eight years old when he began dating her mother. When asked about his relationship with his stepchildren, Ziesmer responded, "I loved them like they were my own." He further testified that his stepchildren typically called him "Dad," and he referred to Claire as "my daughter" during his testimony.

¶9    The jury found Ziesmer guilty of repeated sexual assault of the same child. On June 1, 2018, the circuit court imposed the same sentence Ziesmer had received before withdrawing his no-contest plea—nine years' initial confinement and eleven years' extended supervision.

¶10    When setting forth the conditions of Ziesmer's extended supervision during its sentencing remarks, the circuit court initially stated that Ziesmer was "not to have contact with [Claire] or any minors." However, the court subsequently stated, "[N]o unsupervised contact with minor children." Defense counsel later asked the court to clarify whether Ziesmer was allowed to have supervised contact with minor children, and the court responded, "I don't want any contact with minors. I'm sorry. That's—thank you for correcting that." The court also clarified that the prohibition on contact with minor children barred Ziesmer from having contact with Iris. Defense counsel then asked whether Ziesmer would be allowed to send letters to Iris, and the following exchange occurred:

> THE COURT: [Assistant district attorney] Larson, what's your feeling about that?
>
> MS. LARSON: I guess I'd like to ask her mother.
>
> UNIDENTIFIED SPEAKER: I would prefer not.
>
> MS. LARSON: She would prefer not.
>
> THE COURT: Okay. So no.
>
> [DEFENSE COUNSEL]: In that case if I could ask if it would be up to the agent or have the agent make this decision. As he's progressing through time, I think the agent or the social worker in the prison system may be in a better position than us at this point in time to assess that.
>
> THE COURT: I'm going to say no at this point. If he is doing better, he can always address the Court and ask for a modification at some point in time, and if he's doing well and if the mother of the child changes her mind, that can

happen, but it seems pretty firm that she does not want that contact to occur, okay?

¶11    The circuit court subsequently entered a judgment of conviction, which stated that as a condition of his extended supervision, Ziesmer was to have "[n]o contact with any minor children, to include his daughter." On June 27, 2019, Ziesmer filed a postconviction motion asking the court to modify that condition to allow him to have contact with Iris. The State submitted a letter to the court in opposition to Ziesmer's motion. The State noted the victim witness coordinator had contacted Iris's mother, "who indicated she did not want the condition modified." The State also asserted there had been "no other change in circumstances since the sentencing hearing on June 1, 2018, to justify modifying the extended supervision conditions."

¶12    The circuit court denied Ziesmer's postconviction motion without a hearing. Rather than issuing a written decision, the court simply stamped "DENIED" on the first page of the motion and added the handwritten notation "See DA [district attorney] Letter." Ziesmer now appeals.

**DISCUSSION**

I.    **The circuit court did not erroneously exercise its discretion by barring Ziesmer from having contact with minors, including Iris, as a condition of his extended supervision.**

¶13    WISCONSIN STAT. § 973.01(5) (2017-18) provides that a circuit court "may impose conditions upon [a] term of extended supervision." The statute grants circuit courts "broad discretion" to impose conditions of extended supervision, as long as the conditions are "reasonable and appropriate." *State v. Koenig*, 2003 WI App 12, ¶7, 259 Wis. 2d 833, 656 N.W.2d 499 (2002). "Whether a condition of extended supervision is reasonable and appropriate is determined by how well it

serves the dual goals of supervision: rehabilitation of the defendant and the protection of a state or community interest." *State v. Miller*, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47.

¶14 We review conditions of extended supervision "under the erroneous exercise of discretion standard." *State v. Stewart*, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165. Under that standard, we will uphold a circuit court's discretionary determination as long as the court reached a reasonable conclusion based on a consideration of the appropriate law and the facts of record. *State v. Salas Gayton*, 2016 WI 58, ¶20, 370 Wis. 2d 264, 882 N.W.2d 459. If a circuit court fails to adequately explain the reasons for its discretionary decision, we will independently review the record to determine whether it provides a reasonable basis for the court's ruling. *State v. Clark*, 179 Wis. 2d 484, 490, 507 N.W.2d 172 (Ct. App. 1993).

¶15 In this case, Ziesmer argues the circuit court erroneously exercised its discretion by imposing the no-contact condition "[b]ecause the court failed to consider how the no-contact order was reasonably related to … Ziesmer's rehabilitation or protection of the public, and because both factors favor contact … with [Iris]." We are not persuaded. Instead, we conclude the record supports the court's discretionary decision to order Ziesmer to have no contact with any minor children, including Iris, during his extended supervision.

¶16 Specifically, the record supports a determination that barring contact with Iris would advance a state or community interest—namely, protecting Iris from being sexually abused by Ziesmer. Our supreme court has previously held that in cases involving the sexual abuse of children, the government has "a responsibility to protect the public from further criminal activity by the offender." *Ramaker v.*

*State*, 73 Wis. 2d 563, 568, 243 N.W.2d 534 (1976). Thus, "[a] probation condition that a person convicted of taking indecent liberties with a child not associate with minor children is a reasonable condition." *Id.* at 566. The same is true when a court imposes such a provision as a condition of extended supervision. *See Koenig*, 259 Wis. 2d 833, ¶7 n.3 (noting that "authority relating to the propriety of conditions of probation is applicable to conditions of extended supervision").

¶17 Ziesmer nevertheless asserts that it was unreasonable for the circuit court to prevent him from having contact with Iris as a condition of his extended supervision because the record does not demonstrate that he "ever was or would be a threat to [Iris]." He cites four factors in support of that assertion, each of which we reject.

¶18 First, Ziesmer observes that he was never "charged with or convicted of any type of sexual assault before [Claire's] allegations arose." Be that as it may, Ziesmer was convicted of repeatedly sexually assaulting Claire, who was both a minor and a relative. That conviction, standing alone, provided a basis for the circuit court to conclude that Ziesmer posed a threat to Iris, regardless of whether Ziesmer had been charged with or convicted of sexual assault on any prior occasions.

¶19 Second, Ziesmer asserts there is no evidence that he poses a threat to Iris because his conviction for sexually assaulting Claire, to whom he was not biologically related, "does not necessarily make it more likely that he would assault his own biological child." Based on the evidence presented at Ziesmer's trial, however, the circuit court could reasonably conclude otherwise. Ziesmer testified at trial that his stepchildren called him "Dad" and that he "loved them like they were [his] own." He also referred to Claire as "my daughter" during his trial testimony. Despite Ziesmer's close, parent-like relationship with Claire, he repeatedly sexually

assaulted her. The record therefore supports a conclusion that Ziesmer's sexual assaults of Claire make it more likely that he will sexually assault Iris, even though Iris is his biological daughter and Claire is not.

¶20    Third, Ziesmer contends that his "positive record of complying with bond … proves" he is not a threat to Iris. Ziesmer observes that in February 2015, his bond was modified to allow him to have supervised contact with Iris. After he withdrew his no-contest plea, he was again released on bond with a condition allowing supervised contact with Iris. Ziesmer asserts that he was never charged with violating the conditions of his bond and there were "no issues reported with him seeing [Iris]." He therefore argues his "record of compliance" shows that he "is not a threat to his biological daughter."

¶21    Ziesmer's compliance with his bond conditions does not compel a conclusion that he will not pose a threat to Iris when he is released to extended supervision. Iris was between two and four years old when Ziesmer repeatedly sexually assaulted Claire. She was four years old when Ziesmer was arrested and when his bond was modified to allow supervised contact with her in February 2015. She was seven years old when Ziesmer was released on bond following the withdrawal of his no-contest plea.

¶22    In contrast, when Ziesmer is first eligible for release to extended supervision in August 2025, Iris will be fifteen years old. Ziesmer was convicted of repeatedly sexually assaulting Claire when she was between twelve and fourteen years old. That Ziesmer did not violate his bond by sexually assaulting Iris when she was between two and seven years old does not establish that he will not be a threat to her when she is fifteen years old—only slightly older than Claire was when Ziesmer repeatedly sexually assaulted her.

¶23    Fourth, Ziesmer asserts that "the Department of Correction[s']" ("DOC") policy provides another layer of protection" because "the DOC will still do its own assessment to determine whether it believes contact is appropriate." In support of this assertion, Ziesmer cites several administrative code provisions allowing the DOC to regulate prison inmates' mail and visits. *See* WIS. ADMIN. CODE §§ DOC 309.04, 309.09, 309.11 (Feb. 2019).

¶24    This argument fails because the no-contact condition pertains only to Ziesmer's extended supervision. Ziesmer does not cite any legal authority supporting the proposition that, even in the absence of the no-contact condition, the DOC would "do its own assessment" of whether contact with Iris was appropriate during his extended supervision. Moreover, even assuming the DOC would perform such an assessment, the circuit court could still reasonably conclude that because of the threat Ziesmer posed to Iris, it was appropriate for the court to bar contact with Iris as a condition of his extended supervision, rather than leaving that decision to the DOC.

¶25    Ziesmer next argues that the circuit court erroneously exercised its discretion by imposing the no-contact condition because the condition "does nothing to advance [his] rehabilitation and is in fact harmful to rehabilitation." He then cites a DOC rule regarding inmate telephone calls, which provides that the DOC "shall encourage communication between an inmate and an inmate's family" because such communication "fosters reintegration into the community and the maintenance of family ties" and "helps to motivate the inmate and thus contributes to morale and to the security of the inmate and staff." WIS. ADMIN. CODE § DOC 309.39(1) (Feb. 2019). As the State correctly notes, the DOC rule that Ziesmer cites applies to inmate phone calls, not extended supervision. We agree with the State that "[i]t is not inconsistent for [the] DOC to encourage communication between an

inmate and the inmate's family by telephone, and for the court to prohibit contact between a person on extended supervision and a minor female whose sister the person repeatedly sexually assaulted when the sister was a minor."

¶26 Regardless, even assuming that permitting Ziesmer to have contact with Iris during his extended supervision would advance his rehabilitation, the circuit court could reasonably conclude that the need to protect Iris from Ziesmer outweighed that interest. Again, Ziesmer was convicted of repeatedly sexually assaulting Claire—who called him "Dad" and whom he claimed to love like his own daughter—when she was only slightly younger than Iris will be when Ziesmer is first eligible for release to extended supervision. On these facts, the no-contact condition is reasonable and appropriate because it serves the State's interest in protecting Iris from sexual assault.

¶27 Ziesmer also argues that the circuit court erroneously exercised its discretion by "delegat[ing] its discretion in determining the proper no-contact conditions to [Iris's] mother." However, the record does not support Ziesmer's assertion that the court delegated its discretion to Iris's mother. Instead, the record merely reflects that the court considered Iris's mother's preference when making its decision regarding the no-contact condition. Ziesmer cites no legal authority supporting the proposition that the court could not consider Iris's mother's preference. Moreover, if contact were allowed, it likely would have been only with supervision, which would most naturally be done by Iris's mother as it was when Ziesmer was released on bond. Thus, it was natural for the court to consider the mother's preferences in this matter.

¶28 Finally, Ziesmer argues that the circuit court erroneously exercised its discretion by failing to adequately set forth its reasoning when it imposed the

no-contact condition. As noted above, however, when a circuit court fails to explain its reasons for a discretionary decision, we independently review the record to determine whether it provides a reasonable basis for the court's ruling. *Clark*, 179 Wis. 2d at 490. Here, for all of the reasons explained above, the record supports the court's discretionary decision to impose the no-contact condition.

## II. The circuit court did not err by denying Ziesmer's postconviction motion without a hearing.

¶29 Ziesmer also faults the circuit court for failing to hold an evidentiary hearing on his postconviction motion to modify the no-contact condition. If a postconviction motion alleges sufficient facts that, if true, would entitle the defendant to relief, a circuit court must hold an evidentiary hearing on the motion. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges sufficient facts to entitle the defendant to relief is a question of law that we review independently. *Id.* In so doing, we may consider only the allegations within the four corners of the defendant's motion. *State v. Romero-Georgana*, 2014 WI 83, ¶64, 360 Wis. 2d 522, 849 N.W.2d 668. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Allen*, 274 Wis. 2d 568, ¶9.

¶30 Here, the circuit court properly denied Ziesmer's postconviction motion without a hearing because the allegations in the motion, even if true, would not have entitled Ziesmer to relief. During Ziesmer's sentencing hearing, the court considered and rejected Ziesmer's request that it allow him to have contact with Iris during his extended supervision. Nevertheless, the court acknowledged that

11

Ziesmer could ask the court to modify the no-contact condition at a later date "if he's doing well and if the mother of the child changes her mind."

¶31    Approximately one year later, Ziesmer filed his postconviction motion to modify the no-contact condition, but the motion did not allege any new facts that were not known to the circuit court at the time of sentencing that would have entitled Ziesmer to relief. As the State correctly noted in its letter opposing Ziesmer's motion, the allegations in the motion did not show that there had been a "change in circumstances since the sentencing hearing on June 1, 2018, to justify modifying the extended supervision conditions." The court relied on the reasoning in the State's letter when denying Ziesmer's motion. Because the motion did not allege any new facts that would have entitled Ziesmer to relief, Ziesmer was not entitled to an evidentiary hearing on the motion, and the court did not erroneously exercise its discretion by declining to hold a hearing.[2]

¶32    On appeal, Ziesmer contends the circuit court's failure to hold an evidentiary hearing "depriv[ed] him of the ability to fully present how well he was doing and what treatment he had already accomplished." Critically, however, Ziesmer's postconviction motion contained no allegations regarding those topics. We agree with the State that Ziesmer "is not entitled to a hearing in order to show

---

[2] The only new allegation in Ziesmer's postconviction motion was his assertion, in a single-sentence footnote, that even though the no-contact condition is a condition of his extended supervision, it "*may* prevent the Department of Corrections (DOC) from even considering whether to allow … Ziesmer to write to or have supervised and approved contact with his daughter, [Iris], while in prison." (Emphasis added.) That allegation was insufficient to entitle Ziesmer to relief. Notably, Ziesmer did not allege that the DOC had actually refused to allow him to write to or have contact with Iris while in prison based on the no-contact provision. He simply alleged that the DOC might do so at some unspecified point in the future. That speculative assertion was insufficient to entitle Ziesmer to relief, and it therefore did not require the circuit court to hold an evidentiary hearing on his postconviction motion.

how well he is doing and what treatment he [h]as accomplished when he did not even allege those things in his postconviction motion."

### III. The no-contact condition does not impermissibly infringe on Ziesmer's constitutional right to parent Iris.

¶33  Ziesmer also argues that the no-contact condition impermissibly infringes on his constitutional right to parent Iris.  A condition of extended supervision may infringe on a defendant's constitutional rights as long as the condition is not overly broad and is reasonably related to the defendant's rehabilitation.  *See State v. Oakley*, 2001 WI 103, ¶19, 245 Wis. 2d 447, 629 N.W.2d 200, *opinion clarified on denial of reconsideration*, 2001 WI 123, 248 Wis. 2d 654, 635 N.W.2d 760.

¶34  Ziesmer argues the no-contact condition is overly broad for three reasons.  First, he argues the condition is overly broad because it will effectively terminate his parental rights to Iris, without affording him the due process protections that are normally provided to a parent in termination of parental rights proceedings.  He contends the condition will bar all contact with Iris "for the 11 years of his extended supervision."

¶35  Ziesmer misstates the no-contact condition's impact.  Although the condition applies during the entire eleven-year term of Ziesmer's extended supervision, it only prevents him from having contact with Iris while she is a minor. When Ziesmer is first eligible for release to extended supervision in August 2025, Iris will be about fifteen and one-half years old.  Thus, Iris will be a minor—and Ziesmer will be barred from having contact with her—for only about two and one-half years of his eleven-year extended supervision term.  In addition, if Ziesmer is able to show in the future that he has made enough progress in treatment that he

no longer poses a threat to Iris, he may be able to successfully petition the circuit court to modify the no-contact condition.

¶36 Furthermore, while Ziesmer asserts on appeal that the no-contact condition has affected his ability to have contact with Iris while he is in prison, he cites no factual support for that assertion. Ziesmer merely references the unsubstantiated allegation in his postconviction motion that the no-contact condition "may" prevent the DOC from considering whether to allow him to have contact with Iris while he is in prison. There is nothing in the record to support Ziesmer's assertion that the no-contact condition has actually affected his ability to have contact with Iris during his term of initial confinement. On these facts, we reject Ziesmer's contention that the no-contact condition will effectively terminate his parental rights to Iris.

¶37 Second, Ziesmer argues the no-contact condition is overly broad because the circuit court could have instead imposed less restrictive conditions, such as permitting supervised, written, or telephone contact with Iris, or permitting contact as allowed by his probation agent. During Ziesmer's sentencing hearing, however, the court considered whether to permit supervised or written contact with Iris, and it also considered Ziesmer's request that it allow his probation agent to determine whether he could have contact with her. The court rejected those options, and as explained above, the record supports the court's exercise of discretion in that regard.

¶38 In particular, the circuit court could reasonably conclude that given Ziesmer's sexual abuse of Claire, any contact with Iris during his extended supervision—regardless of whether it was supervised—could pose a threat to her. The court could also consider the fact that Iris's mother—who had previously

supervised Ziesmer's contact with Iris while he was released on bond—was apparently unwilling to do so during Ziesmer's extended supervision. In addition, the court could reasonably determine that the State's interest in protecting Iris warranted imposing a no-contact condition, rather than delegating the decision about contact to Ziesmer's probation agent. Furthermore, the court noted that if Ziesmer made progress in treatment, he could petition the court to amend the no-contact condition at a later date. Under these circumstances, the fact that the court could have chosen to impose less restrictive conditions does not convince us that the no-contact condition is overly broad.

¶39 Third, Ziesmer argues the no-contact condition is overly broad because in addition to prohibiting contact with Iris, it also "bars him from having any contact with any other relatives that are minors, including his many grandchildren." He further notes that the condition would "prevent him from raising any additional children, should he decide to father more children." These arguments fail because Ziesmer did not ask the circuit court to modify the no-contact condition to permit contact with his grandchildren or other minor relatives, or to allow him to raise additional children. Instead, Ziesmer's postconviction motion merely asked the court to "modify his condition of extended supervision to allow contact with his biological child, [Iris]." Similarly, Ziesmer argues on appeal that the no-contact condition should be modified to state: "no contact with any minor children, except contact is allowed with his biological daughter, [Iris]." Ziesmer's argument that the no-contact condition is overly broad because it prohibits him from having contact with minor relatives other than Iris therefore has no relevance to his requested relief.

¶40 In arguing that the no-contact condition is overly broad, Ziesmer likens his case to *United States v. Baker*, 755 F.3d 515 (7th Cir. 2014). Baker was convicted of criminal sexual assault in January 1982 and July 1983 and was

15

sentenced to concurrent prison terms. *Id.* at 519. He was released on parole in 1986, and within three months of his release, he kidnapped, threatened, and sexually assaulted two women. *Id.* After Baker was released on parole again in 2003, he was fired from his job at a restaurant after he attempted to solicit sex from two fourteen-year-old girls. *Id.*

¶41 In 2012, Baker pled guilty to violating requirements of the sex offender registry, and as a condition of his supervised release, he was ordered not to have contact with any person under the age of eighteen, including his own children, except in the presence of a responsible adult. *Id.* at 520-22. Baker challenged that condition on appeal, and the government conceded "that the ban on supervised contact with Baker's own children should be vacated" because "there [was] no evidence that Baker ha[d] abused or attempted to abuse his own children, or that he [was] a danger to his own family." *Id.* at 526. Based on the State's concession, the Seventh Circuit vacated the condition prohibiting Baker from having unsupervised contact with his children. *Id.* at 526-27.

¶42 Ziesmer argues that just as the no-contact condition in *Baker* was overly broad because there was no evidence that Baker was a danger to his own children, the no-contact condition in this case is overly broad because there is no evidence that Ziesmer poses a threat to Iris. We disagree. As explained above, the circuit court could reasonably conclude that Ziesmer was a danger to Iris based on his repeated sexual assaults of Claire. While Ziesmer again asserts that his "conviction of sexual assault for his stepdaughter does not mean his biological daughter is at risk," we have already rejected that contention.

¶43 Finally, Ziesmer argues the no-contact condition is unconstitutional because it is not reasonably related to his rehabilitation. *See Oakley*, 245 Wis. 2d

16

447, ¶19. We are not persuaded. "A condition is reasonably related to the goal of rehabilitation if it assists the convicted individual in conforming his or her conduct to the law." *Id.*, ¶21. Here, the no-contact condition will assist Ziesmer in conforming his conduct to the law by removing any opportunity he might have to sexually assault Iris. The condition is therefore reasonably related to Ziesmer's rehabilitation. In addition, as noted above, Ziesmer's rehabilitation is not the only factor the circuit court considered in establishing the no-contact condition. The no-contact condition not only is reasonably related to the goal of Ziesmer's rehabilitation, it also assures Iris's protection.

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

17